[Civ. No. 26682. First Dist., Div. Three. Mar. 9, 1971.]

RAYMOND OLSEN, a Minor, etc., et al., Plaintiffs and Appellants, v. EDMOND R. McGILLICUDDY et al., Defendants and Respondents.

**COUNSEL**

Lounibos & Lounibos and John J. King, Jr., for Plaintiffs and Appellants.

Geary, Geary & Shea and Michael F. O'Donnell for Defendants and Respondents.

**OPINION**

**BROWN (H.C.), J.**—This is an appeal from a judgment following a defense verdict in an action wherein plaintiff, a minor, suffered injuries by reason of a BB gun wound. The gun was owned by defendant, also a minor, and had been furnished him by his parents who are also named defendants.

It is claimed that the defendant parents who had given their minor son a BB gun and permitted him to use it were in violation of a Petaluma

ordinance (Petaluma ordinance No. 756)[1] and that such violation was the proximate cause of plaintiff's injuries.

The trial court refused to permit the Petaluma ordinance to be introduced in evidence. The principal question before us is the propriety of that ruling.

The ordinance provides that a parent having the care of any minor shall not permit such minor to have in his possession or to fire within the City of Petaluma a BB gun. In this case the evidence was undisputed that the defendant parents had given the BB gun to the minor as a present and permitted him to use it.

The accident occurred in the back yard of the defendants' home at about 5:15 p.m. on August 14, 1967. The defendants' son, the plaintiff and a third boy, all 11 years of age, were on the cement patio of the defendants' home firing BB guns belonging to defendant and the third boy. At a time when the plaintiff minor had sole possession of the defendant's BB gun, he looked down the barrel and said, "[L]ook how brave I am." The BB gun then discharged in some fashion causing a BB to lodge in the plaintiff minor's left eye. There was no evidence to show any mechanical defect that could cause the gun to discharge. Plaintiff minor denied pulling the trigger.

The statute (Petaluma ordinance No. 756) was excluded by the trial court on the ground that it was invalid because the subject was preempted by state law. It is well settled that if the Petaluma ordinance is in conflict

---

[1]Petaluma ordinance No. 756 reads in part as follows: "Section 16.26. Firing and Possession of Guns and Firearms Unlawful in Certain Places. Except as otherwise provided in this Chapter no person shall have in his possession within this City, and no person shall fire or discharge, or cause to be fired or discharged within this City, nor shall any parent, guardian or person having the care, custody or control of any minor permit such minor to have in his possession within this City, or to fire or discharge or cause to be fired or discharged within the City, any firearm, . . . or explosive of similar nature, rifle, air rifle, airgun, *BB gun* or pellet gun or any instrument of any kind, character or description which throws or projects bullets or missiles of any kind to any distance by means of elastic force, air or any explosive substance, all referred to in this Section as 'firearms'." (Italics added.)

"Section 16.27. Firing and Possession and Firearms Unlawful in Certain Places— Exceptions. The provisions of Section 16.26 as to the use of any of the firearms mentioned therein shall not apply to any of the following cases: a. To police, peace officers or persons in military service in the discharge of their duties and using reasonable care; b. To persons using firearms in necessary self defense; c. To the possession of such firearms for keeping at the place of residence or business of the person otherwise in lawful possession thereof, or while traveling to or from a legal firing, shooting or target range or hunting ground; d. To the discharging or firing of such firearms or causing them to be discharged or fired at a legal firing, shooting or target range or hunting ground; e. To the discharging or firing of fireworks after permit therefor has been issued by the Fire Chief as provided by law; f. To the use of a gun firing .22 caliber shot-cartridge only, upon a written permit applied for and granted by the Chief of Police to protect life or property against animals, birds or rodents."

with state legislation which has preempted the subject matter either directly or by implication, the ordinance would be invalid and the trial court's exclusion of it would be proper.

In *Galvan* v. *Superior Court,* 70 Cal.2d 851 [76 Cal.Rptr. 642, 452 P.2d 930], involving an attack upon the constitutionality of a San Francisco ordinance requiring registration of firearms with San Francisco police, the court (p. 856) said: "The validity of San Francisco law is governed by the California Constitution, article XI, section 11, which restricts local law-making to 'all such local, police . . . and other regulations as are not in conflict with general laws.' Any local law that directly conflicts with state legislation is void. [Citations.]" The court further said relative to preemption by the state by implication that ". . . Whenever the Legislature has adopted a general scheme for the regulation of a particular subject, no local legislation on that subject is permissible. [Citations.]

■ "To determine whether the Legislature intended to occupy a particular field to the exclusion of all local regulation, we may look to the ' "whole purpose and scope of the legislative scheme." ' (*In re Lane, supra,* 58 Cal.2d at pp. 102-103 [22 Cal.Rptr. 857, 372 P.2d 897].)" (P. 859.)

■ While numerous sections of our Penal Code deal with the regulation of the sale of firearms and prohibit the possession of firearms by persons generally and by minors, none is applicable here. Those dealing with a person furnishing firearms to minors refer to firearms furnished *without the permission of their parents.* Here defendants gave the BB gun to their minor son and permitted him to use it. The question before us is narrowed to whether the state has so completely covered the subject of firearms generally that it has become exclusively a matter of state concern. (*In re Hubbard,* 62 Cal.2d 119 [41 Cal.Rptr. 393, 396 P.2d 809].)

In *In re Hubbard, supra,* which involved the question of whether the state had assumed the regulation of games of chance to the exclusion of further regulation by a municipality, the court set forth three tests for guidance in determining pre-emption by implication and stated: "(1) . . . [T]he subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the municipality." (P. 128.)

Respondent has listed some 32 state statutes dealing with firearms covering such subjects as firearms in assaults, government offices, in airplanes, the use of guns in a threatening manner, bringing firearms into prisons, concealable firearms, etc. Despite the wide coverage by the state on the subject of firearms, it does not follow that the state wished to exclude regulations by a municipality which considered more stringent regulation necessary in its particular community.

In *Galvan* v. *Superior Court, supra,* 70 Cal.2d 851, 864, the court said: "That problems with firearms are likely to require different treatment in San Francisco County than in Mono County should require no elaborate citation of authority. Such differences were recognized in *People* v. *Jenkins, supra,* 207 Cal.App.2d Supp. 904, 907 [24 Cal.Rptr. 410], *People* v. *Commons, supra,* 64 Cal.App.2d Supp. 925, 932 [148 P.2d 724] [see fn. 5, *supra*], and in *Gleason* v. *Municipal Court,* 226 Cal.App.2d 584, 587 [38 Cal.Rptr. 226]. The need for differential treatment of firearms was also recognized by the Legislature in section 25840 of the Government Code, which, as noted, authorizes counties to 'prohibit and prevent the unnecessary . . . discharge of firearms. . . .' " (See also *In re Hoffman,* 155 Cal. 114 [99 P. 517].)

Following *Galvan,* the Legislature in 1969 enacted Government Code section 9619 and made clear its intent "to occupy the whole field of regulation of the *registration or licensing of . . . firearms. . . .*" (Italics added.) Despite the opportunity to include an expression of intent to occupy the entire field of firearms, the legislative intent was *limited to* registration and licensing. We infer from this limitation that the Legislature did not intend to exclude municipalities from enacting further legislation concerning the use of firearms.

It also does not appear that the adverse effect of a local ordinance on transient citizens of the state outweighs the possible benefit to the municipality. (See *In re Hubbard, supra,* 62 Cal.2d at p. 128.) The Petaluma ordinance would not unduly burden transient minors when compared to the local interest and desired safety of all minors.

We have concluded, therefore, that the Legislature has not preempted the subject of the regulation of the use of BB guns by minors either directly or by implication.

██ Respondents also argue that the ordinance is inapplicable here because plaintiff is not a member of the class of people the ordinance was designed to protect and, further, that the error was rendered harmless by reason of contributory negligence as a matter of law.

██ The doctrine of negligence per se does not apply even though a

statute has been violated if the plaintiff was not in the class of persons designed to be protected or the type of harm which occurred was not one which the statute was designed to prevent. (*Hatch* v. *Ford Motor Co.,* 163 Cal.App.2d 393, 397-399 [329 P.2d 605]; *Courtell* v. *McEachen,* 51 Cal.2d 448, 459 [334 P.2d 870]; Evid. Code, § 669, subd. (a) (4).) ■ Respondents argue that the ordinance was designed solely to prevent injury to persons injured when shot by the person violating the statute and that since appellant was holding the gun when it went off, he is not within the class protected, the accident was not one the statute was designed to protect against nor was the violation of the ordinance a proximate cause of the accident. It is common knowledge, however, that BB guns are not primarily or even ordinarily used as weapons and that accidents occur during play with these guns regardless of which playmate has physical possession at the time the gun goes off. These guns can be considered as much in a class of dangerous toys as firearms. Reasonably construed, the ordinance could be seen as intended to protect against all accidents which might occur from BB guns.

We believe that upon the record before us the ordinance is applicable and should have been admitted into evidence. ■ We have also concluded that whether appellant was contributorily negligent or assumed the risk are questions of fact to be determined by the trier of fact.

■ ". . . A child of immature years is not held to the same standard of conduct as an adult, but only to the degree of care ordinarily exercised by children of like age, mental capacity and experience. There are no particular ages at which he is deemed either wholly without capacity or fully accountable, and the question of capacity is usually for the jury. [Citations.]" (2 Witkin, Summary of Cal. Law (1960) Torts, § 224, p. 1418; see Modern trends as to contributory negligence of children, 77 A.L.R.2d, p. 917.) In *Calandri* v. *Ione Unified School Dist.,* 219 Cal.App.2d 542 [33 Cal.Rptr. 333], a case involving the possibility of contributory negligence of a 15-year-old, the court, citing *Ross* v. *San Francisco Unified School Dist.,* 120 Cal.App.2d 185, 191 [260 P.2d 663], noted that both contributory negligence and proximate cause are normally fact questions in the absence of compelled inferences to the contrary; that this was particularly to be emphasized when a minor's alleged negligence is involved, with much more lenient rules in favor of the minor to be applied. The court then cited the quotation: " ' "Youth is ever the time of heedlessness, of impulsiveness, and of forgetfulness." ' " (P. 551.) ■ While there was evidence of contributory negligence, it was not such as to constitute contributory negligence as a matter of law.

■ The jury here may have decided this case on either the basis that there was no negligence on behalf of respondents or that appellant was con-

tributorily negligent. In the event of the former, the jury may have decided favorably to the appellant on the issue of contributory negligence.

Under these circumstances, failure to admit the ordinance and to instruct on its bearing on the issue of negligence means that it cannot be said that a result more favorable to appellant could not reasonably have been expected but for the error in excluding evidence. (*People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243]; *Schubkegel* v. *Gordino,* 56 Cal.App.2d 667, 673 [133 P.2d 475].) We have, therefore, concluded that failure to admit the ordinance and to so instruct constitutes reversible error.

The judgment is, therefore, reversed and the matter is remanded for new trial.

Draper, P. J., and Caldecott, J., concurred.