[Civ. No. 47151. Second Dist., Div. Five. Aug. 19, 1976.]

LONG BEACH POLICE OFFICERS ASSOCIATION,
Plaintiff and Appellant, v.
CITY OF LONG BEACH et al., Defendants and Respondents.

**COUNSEL**

Stephen Warren Solomon and G. William Shaeffer for Plaintiff and Appellant.

Leonard Putnam, City Attorney, John R. Calhoun and Richard A. Alesso, Deputy City Attorneys, for Defendants and Respondents.

## OPINION

ASHBY, J.—This is an action for declaratory and injunctive relief brought by the Long Beach Police Officers Association, on behalf of approximately 650 police officers employed by the City of Long Beach Police Department, to restrain enforcement of section 4242 of the Long Beach Police Department Manual, relating to the display and discharge of firearms by the officers. Plaintiff contends that the police department policy denies the officers due process and equal protection of the law and is inconsistent with and preempted by state law. The trial court found in favor of defendants. We affirm.

## BACKGROUND

Various national commissions and experts on the subject of police administration have long recommended that police departments formulate written policies governing the use of firearms by their officers.[1] Penal statutes defining justifiable homicide and powers of arrest contain broad language and provide little guidance to the officer in the field.[2] Without adequate training and policy guidance from his department, the officer alone bears the awesome responsibility of choice when to use his gun.[3]

Studies have shown that "many departments have never reduced firearms rules or policy to written form. Instead, when to fire is frequently trusted to the judgment or the discretion of officers as individuals. Some departments have ignored the issue completely and have never considered articulating such a policy. Finally, some departments function with policies so outdated or unrealistic that they actually

[1]United States President's Commission on Law Enforcement and the Administration of Justice, The Challenge of Crime in a Free Society (1967) page 193; Task Force on the Police, United States President's Commission on Law Enforcement and the Administration of Justice, The Police (1967) pages 189-190; National Advisory Commission on Criminal Justice Standards and Goals, Police (1973) pages 53-55; Chapman, *Standard Procedures to Govern Use of Firearms by Police Agencies* (1968) reprinted in 4 J. Cal. L. Enforcement pages 187-188 (hereafter *Chapman*); Uelmen, *Varieties of Police Policy* (1973) 6 Loyola L.A. L. Rev. pages 1-7 (hereafter *Uelmen*).

[2]*Uelmen, supra,* at pages 4-7.

[3]*Chapman, supra,* at page 188.

have no practical application, and are worthless and often dangerous as guidance to police personnel."[4]

The City of Long Beach is a duly organized chartered city operating under the laws of California and the city's charter. Section 161 of the Long Beach City Charter provides that "[t]he City police department shall be governed at all times by such rules and regulations as the City Manager may prescribe." On or about June 1, 1972, defendant John R. Mansell, the City Manager of the City of Long Beach, and defendant William J. Mooney, Chief of Police of the City of Long Beach Police Department, duly prescribed section 4242 of the Long Beach Police Department Manual. The relevant portion of this section is taken from a model firearms policy proposed by Professor Samuel G. Chapman, who was assistant director of the President's Commission on Law Enforcement and the Administration of Justice (Task Force on Police).[5]

Section 4242 provides in pertinent part as follows:

■ "The policy of the Department governing the display and discharge of firearms is that members shall exhaust every other reasonable means of apprehension before resorting to the use of a firearm.

■■ "An officer shall not discharge a firearm in the performance of his police duties except under the following circumstances and only after all other means fail:

■ "In the necessary defense of himself from death or serious injury when attacked.

■ "In the necessary defense from death or serious injury of another person attacked.

■ "To effect an arrest, to prevent an escape, or to recapture an escapee when other means have failed, of an adult felony suspect when the officer has reasonable cause to believe that (a) the crime for which the arrest is sought involved conduct including the use or threatened use of deadly force *and* [italics in original] (b) *there is a substantial risk that*

---

[4]*Chapman, supra,* at page 187 (fn. omitted).

[5]*Chapman, supra,* at page 195. The *Chapman* model has been made available in California through the cooperation of the California Commission on Peace Officer Standards and Training. (*Uelmen, supra,* at p. 30.)

*the person whose arrest is sought will cause death or serious bodily harm if apprehension is delayed.* [Italics ours.]

■ "To kill a dangerous animal or one that is so badly injured that humanity requires its removal from further suffering and other disposition is impractical.

■ "To give an alarm or to call assistance for an important purpose when no other means can be used.

■ "For target practice at an approved range.

■ "An officer shall not fire at persons known to be, or suspected of being, juveniles (persons under 18 years of age) except (a) in the necessary defense of himself from death or serious injury when attacked *or* [italics in original] (b) in the necessary defense from death or serious injury of another person attacked.

■ "Firearms shall not be discharged under the following circumstances:

"As a warning.

"At moving or fleeing vehicles unless (a) in the necessary defense of himself from death or serious injury when attacked *or* [italics in original] (b) in the necessary defense from death or serious injury of another person attacked."

## CONTENTIONS

Plaintiff contends specifically that the portion we have italicized and labeled as part II A, 3(b) denies due process and equal protection to the officers, and generally that the regulations are beyond the power of the city because the field has been exclusively preempted by state law. Plaintiff voices a number of concerns about the effect of these regulations. Plaintiff bases its constitutional arguments on the fact that an officer who violates the regulations is subject to possible discipline, including reprimand, suspension, reduction in rank or dismissal, and the fact that such violation could be used, in a civil suit against the officer for wrongful death or injury, as evidence of failure to exercise due care toward the person shot. (*Grudt* v. *City of Los Angeles,* 2 Cal.3d 575, 587-588 [86 Cal.Rptr. 465, 468 P.2d 825]; *Dillenbeck* v. *City of Los*

*Angeles,* 69 Cal.2d 472, 477-484 [72 Cal.Rptr. 321, 446 P.2d 129].) Plaintiff also perceives the city's policy as more restrictive than the provisions of the Penal Code relating to justifiable homicide and the powers of arrest, sections 196, subdivision 3;[6] 197, subdivisions 1 and 4;[7] 835a;[8] and 843.[9] Plaintiff also asserts that the city's policy is not necessarily the same as that of neighboring police departments[10] with whom Long Beach has mutual assistance pacts,[11] and contends that a uniform rule should be established.[12] Based on these differences, plaintiff argues the regulations are invalid under state law and an unconstitutional deprivation of due process and equal protection.

[6]Penal Code section 196, subdivision 3, provides:
"Homicide is justifiable when committed by public officers and those acting by their command in their aid and assistance, either—
".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"3. When necessarily committed in retaking felons who have been rescued or have escaped, or when necessarily committed in arresting persons charged with felony, and who are fleeing from justice or resisting such arrest."

[7]Penal Code section 197, subdivisions 1 and 4, provides:
"Homicide is also justifiable when committed by any person in any of the following cases:
"1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,
".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .
"4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace."

[8]Penal Code section 835a provides:
"Any peace officer who has reasonable cause to believe that the person to be arrested has committed a public offense may use reasonable force to effect the arrest, to prevent escape or to overcome resistance.
"A peace officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested; nor shall such officer be deemed an aggressor or lose his right to self-defense by the use of reasonable force to effect the arrest or to prevent escape or to overcome resistance."

[9]Penal Code section 843 provides:
"When the arrest is being made by an officer under the authority of a warrant, after information of the intention to make the arrest, if the person to be arrested either flees or forcibly resists, the officer may use all necessary means to effect the arrest."

[10]It was stipulated that Long Beach has common boundaries with the counties of Los Angeles and Orange, and with the cities of Bellflower, Carson, Compton, Cypress, Hawaiian Gardens, Lakewood, Los Alamitos, Los Angeles, Paramount, Seal Beach, and Signal Hill. At trial plaintiff introduced evidence of the shooting policies of the Los Angeles, Compton and Signal Hill Police Departments and the Los Angeles County Sheriff.

[11]It was stipulated that Long Beach police officers work in conjunction with officers employed by other entities, both within and without the City of Long Beach.

[12]A study of the shooting policies of different police agencies in metropolitan Los Angeles found variations in departmental policies but also variations in interpretation by

## Discussion

The formulation of a policy governing use of deadly force by police officers is a heavy responsibility involving the delicate balancing of different interests: the protection of society from criminals, the protection of police officers' safety, and the preservation of all human life if possible. This delicate judgment is best exercised by the appropriate legislative and executive officers. The effort of the appropriate officials of the City of Long Beach to make that determination in the interests of its citizens and its police officers should be upheld if it is consistent with state law and constitutional standards.

We deal first with the issue of preemption by state law to which the parties have devoted the major portions of their briefs. In this connection the parties have taken extreme and diametrically opposed positions. Plaintiff argues that the subject matter of the regulation has been totally preempted by the pertinent provisions of the Penal Code, and that the city therefore has no power to enact any regulations in this area. (See, e.g., *Abbott* v. *City of Los Angeles*, 53 Cal.2d 674, 681-682 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385].) At the opposite extreme, the city contends that the regulation is exclusively a municipal affair within the meaning of article XI, section 5, of the California Constitution, and that therefore the city is free to enact any regulation on the subject even if it conflicts with state law. (See *Professional Fire Fighters, Inc.* v. *City of Los Angeles*, 60 Cal.2d 276, 292-293 fn. 11 [32 Cal.Rptr. 830, 384 P.2d 158]; *Bishop* v. *City of San Jose*, 1 Cal.3d 56, 61 [81 Cal.Rptr. 465, 460 P.2d 137].) We can agree with neither of these contentions.

We do not accept defendants' contention that regulation of the use of firearms by Long Beach police officers to apprehend felons is exclusively a "municipal affair." Just as the use of city streets by police and fire vehicles affects not only the municipality's citizens but also transients, and is thus a matter of state-wide concern (*Lossman* v. *City of Stockton*, 6 Cal.App.2d 324, 332 [44 P.2d 397]), so also the firing of guns by Long Beach police officers and the apprehension or escape of felons in Long Beach affects the people of the state generally. The Legislature could therefore regulate such matters, even as to chartered cities, if it chose to. (See *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* at p. 292.)

administrators and officers of policies which were identical on their face. (*Uelmen, supra, passim.*)

However, the city is free under its police power, article XI, section 7, of the California Constitution, to enforce its own regulations on the subject if they are not in conflict with state law and the state has not preempted the field. (*Bishop* v. *City of San Jose, supra,* at p. 62; *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* at p. 292 fn. 11; see *In re Hubbard,* 62 Cal.2d 119, 127-128 [41 Cal.Rptr. 393, 396 P.2d 809].)

■ In determining whether the state has preempted the field, we look to the pattern of legislation, the language used in the relevant Penal Code provisions, and the nature of the subject matter. (See *In re Hubbard, supra,* at p. 128; *Galvan* v. *Superior Court,* 70 Cal.2d 851, 859-860 [76 Cal.Rptr. 642, 452 P.2d 930]; *Olsen* v. *McGillicuddy,* 15 Cal.App.3d 897, 901 [93 Cal.Rptr. 530].) ■ We find nothing in those three determinants which indicates that the Legislature intended the Penal Code provisions to preclude a more cautious use of deadly force by local police agencies than permitted by the code sections. On the contrary, there has been a specific indication from the Legislature that preemption was not intended. (See *Pipoly* v. *Benson,* 20 Cal.2d 366, 371 [125 P.2d 482, 147 A.L.R. 515].)

In 1971 the Legislature added section 832 to the Penal Code, requiring all persons described in that chapter as peace officers to receive training in the exercise of powers of arrest and in the carrying and use of firearms. Subdivision (a) of that section specifically provides that "[t]he course of training in the carrying and use of firearms shall not be required of any peace officer whose employing agency prohibits the use of firearms." Obviously the Legislature contemplated that some law enforcement agencies may have a restrictive policy on the use of firearms.

Furthermore, the legislation embodying that provision also carried this statement: "It is the intent of the Legislature in enacting this act that the minimum standards described in Section 2 of this act shall be designed to raise the level of competence of peace officers where necessary and *are not intended to supersede state or local law enforcement policy regarding the use of firearms or the exercise of powers to arrest.*" (Stats. 1971, ch. 1504, § 3, p. 2975; italics added.)

The language of the Penal Code provisions does not mandate the use of deadly force in certain described situations, it merely permits it. Thus the language itself implies that a more cautious policy is permissible.

Finally, plaintiff contends that the nature of the subject matter requires uniform treatment, that there is no good reason why a certain felon should be allowed to escape in one jurisdiction but be shot in another. This argument goes to the wisdom of the regulation and is not persuasive of its invalidity. Courts have recognized that the problem of use of firearms may be different in one type of area than another. (*Galvan* v. *Superior Court, supra,* 70 Cal.2d 851, 864; *Olsen* v. *McGillicuddy, supra,* 15 Cal.App.3d 897, 902.) Problems of crime and law enforcement may also vary significantly from city to city.

While it might be desirable to make uniform the shooting policies of neighboring jurisdictions or even statewide, this can not and should not be accomplished by judicial fiat. It is clear that the Legislature has not at this time concluded that such uniformity should be imposed, particularly in view of the strong tradition in this country of local law enforcement.[13]

The above analysis implies not only that the field has not been preempted by state law, but also that the regulations are not in actual conflict with the Penal Code. ■ The justifiable homicide sections provide a defense to the officer in a criminal prosecution for homicide. The regulations in no way remove this defense. They merely provide cautionary guidelines for the officer.

The regulations do not endanger the safety of the officer. Consistent with the Penal Code, they preserve the right of the officer to use deadly force when in the necessary defense of himself (or other persons) from death or serious injury when attacked. This standard applies as well when the suspect is a juvenile.

With regard to arrest, prevention of escape or recapture of adult felony suspects, the regulations are not substantially inconsistent with the Penal Code as interpreted by the courts. Plaintiff concedes that in this day and age neither an officer nor a private person may rely on the literal language of the 1872 code provisions which appear to justify the use of deadly force to effect an arrest for, or to prevent the commission of, any felony. In view of the great expansion of crimes which have been made

[13]In enacting Government Code section 50081, relating to funds for safety equipment for local law enforcement agencies, the Legislature declared: "The Legislature reaffirms its belief that responsibility and authority for law enforcement should and must remain under control of local law enforcement agencies." (Stats. 1970, ch. 1531, § 1, p. 3093.)

In his study of different police shooting policies, Uelmen found little agreement on how uniformity should be accomplished and much resistance by local police administrators to state control. (*Uelmen, supra,* at pp. 59-64.)

felonies, the courts have held that deadly force may be used against felony suspects only if the felony is a "forcible and atrocious" one, which threatens death or great bodily harm. (*People* v. *Ceballos*, 12 Cal.3d 470, 477-484 [116 Cal.Rptr. 233, 526 P.2d 241]; *People* v. *Piorkowski*, 41 Cal.App.3d 324, 328-332 [115 Cal.Rptr. 830]; *People* v. *Jones*, 191 Cal.App.2d 478, 481-482 [12 Cal.Rptr. 777].)

■ In fact the only portion of the regulations about which plaintiff specifically complains is part 3(b) of section II A, which provides as follows:

"[II A] An officer shall not discharge a firearm in the performance of his police duties except under the following circumstances and only after all other means[14] fail:

[3] "To effect an arrest, to prevent an escape, or to recapture an escapee when other means have failed, of an adult felony suspect when the officer has reasonable cause to believe that (a) the crime for which the arrest is sought involved conduct including the use or threatened use of deadly force *and* [italics in original] (b) *there is a substantial risk that the person whose arrest is sought will cause death or serious bodily harm if apprehension is delayed.* [Italics ours.]"

Plaintiff contends that this part is unconstitutionally vague and that it forces the police officer to guess at the future intentions of the felony suspect. It is urged that while the officer is trying to figure out whether the suspect will cause death or serious bodily harm if apprehension is delayed, the officer himself or some other person might be injured.

We agree that an officer in the field, faced with making a split-second decision under the stress of chase of a serious felon, should not be expected to make fine theoretical distinctions based on speculation concerning the suspect's future conduct. But we think that the problem posed by plaintiff is actually more theoretical than real. Since, under part 3(a), the suspect in the hypothetical situation posed will be sought for "conduct including the use or threatened use of deadly force," in the vast

---

[14]In requiring the officer first to try "other means," this obviously has reference to other *reasonable* means, consistent with section I of the regulation. The officer is not required to exhaust every means that can be thought up by inventive counsel.

number of cases that fact itself would justify the officer reasonably to believe that "there is substantial risk that the person whose arrest is sought will cause death or serious bodily harm if his apprehension is delayed."

We note that the language used in this part of the regulation comes from section 3.07 of the Model Penal Code, which justifies deadly force to effect an arrest when there is no substantial risk of injury to innocent persons and "(iv) the actor believes that: [¶] (1) the crime for which the arrest is made involved conduct including the use or threatened use of deadly force; *or* [¶] (2) there is a substantial risk that the person to be arrested will cause death or serious bodily harm if his apprehension is delayed." (ALI, Model Pen. Code, § 3.07, Proposed Official Draft, May 4, 1962, p. 57; italics added.)

Thus, the Model Penal Code connects the two pertinent standards with "or" rather than "and" which is used in the city's regulation. Although Professor Chapman's article, which also uses the word "and," was submitted to the trial court as evidence of the background of the city's regulation, there was no evidence as to Professor Chapman's intent or the city's intent in using the word "and" rather than "or."[15]

■ We are not persuaded that regulation 4242 conflicts with the Penal Code, or that it actually subjects the officers to more restrictive standards than would apply to a private citizen effecting an arrest, as contended by plaintiff.[16] If the regulation is in fact more restrictive than the standards imposed on a private citizen, there is a rational basis for such distinction. Police officers are normally armed at all times, and it is their job to arrest criminals; neither is true of private citizens. Thus the sheer number of possible incidents justifies cautioning the officer. Furthermore, the city, as employer of the officer and a potential codefendant in a suit for wrongful death or injury, has an interest in the officer's conduct which it lacks toward a private citizen. Thus it is reasonable to provide

[15]Apparently, if the regulation were amended to substitute "or" for "and," plaintiff's major objection to the regulation would be allayed.

[16]Plaintiff. also bases its equal protection argument on the contention that the regulation subjects Long Beach officers to different standards than officers in other jurisdictions. Although the firearms policies of other jurisdictions might be differently phrased, plaintiff presented no persuasive evidence that this was actually a substantial problem among police agencies, or that any such difference had in fact created confusion or hazard in past instances of joint operations with other jurisdictions.

restrictions on the officers' use of firearms. Police officers are constitutionally subjected to many burdens and restrictions that private citizens are not. (See *Kelley* v. *Johnson* (1976) 425 U.S. 238 [47 L.Ed.2d 708, 716, 96 S.Ct. 1440].)

■ Finally, plaintiff contends that the regulation deprives the officers of property because, under the rule of *Grudt* v. *City of Los Angeles, supra,* 2 Cal.3d 575, 587-588, and *Dillenbeck* v. *City of Los Angeles, supra,* 69 Cal.2d 472, 477-484, the regulations are admissible in a suit against the officer for civil liability for wrongful death or injury, as evidence of the appropriate standard of care. Plaintiff therefore argues the regulation subjects the officers to civil liability. We do not agree with this argument. Certainly that is not the *intent* of the regulation. The purpose of the regulation is to provide training and guidance to the officer so that he will not get into a situation where a plaintiff could claim that he used excessive force. Furthermore, *Grudt* and *Dillenbeck* do not create a liability; they merely hold the regulations admissible as *rebuttable evidence* of the relevant standard of care. (*Dillenbeck* v. *City of Los Angeles, supra,* at pp. 480-481 & fn. 4.) The defendant in such a suit is free to argue that the regulation is more stringent than the minimum standard of care required by law. Finally, as pointed out above, we perceive no substantial conflict between the regulations and the pertinent statutes as they have been interpreted by the courts. While it is conceivable that a potential plaintiff might seize upon a technical violation of the regulation which was not otherwise unlawful, and make it a basis for a lawsuit, there is very small likelihood of such a case arising.[17]

So far as the possibility of internal discipline, suspension or dismissal is concerned, the establishment of the guidelines serves to protect the officers by laying down the rules in advance. An officer who complies with the guidelines in the regulation will not be subject to arbitrary or discriminatory second-guessing by his superiors.

We conclude that section 4242 of the Long Beach Police Department Manual is a reasonable regulation within the powers of the city manager

[17]In this case it was stipulated "[t]hat presently there are four lawsuits for civil damages pending naming the City of Long Beach and individual police officers as defendants which allege that the use of firearms by said officers caused or contributed to plaintiff's damages." That stipulation does not indicate whether any of the plaintiffs in those cases based their case upon violation of section 4242. It is equally likely that the purpose of the stipulation was to show that the city had a financial interest in encouraging a cautious use of firearms by its officers.

to prescribe. It is not in conflict with or preempted by state law. It does not deny constitutional rights to the officers.

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.