[No. A018441. First Dist., Div. Three. Oct. 13, 1982]

JANE DOE et al., Petitioners, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

[No. A018445. First Dist., Div. Three. Oct. 13, 1982.]

GEORGE SORACCO et al., Petitioners, v.
CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

510

## COUNSEL

Jeremiah F. Hallisey, Don B. Kates, Jr., O'Brien & Hallisey, Pillsbury, Madison & Sutro, Noble K. Gregory, Vaughn R. Walker and Robert A. Gordon for Petitioners.

George Agnost, City Attorney, Buck E. Delventhal and Thomas J. Owen, Deputy City Attorneys, William F. McCabe, Jonathan R. Bass, Jacobs, Sills & Coblentz, Dirk M. Schenkkan, Brian E. Gray, Howard, Rice, Nemerovski, Canady, Robertson & Falk, Robert A. Thompson, Annamary E. Gannon, Pettit & Martin and Thomas E. Horn for Respondents.

Natalie E. West, City Attorney (Berkeley), John Belcher, Assistant City Attorney, Louis B. Green City Attorney (Sunnyvale), and Diane M. Lee, City Attorney (Palo Alto), as Amici Curiae on behalf of Respondents.

## OPINION

**WHITE, P. J.**—These two petitions challenge the validity of the San Francisco Handgun Ordinance [or Handgun Ordinance], adopted June 28, 1982, and effective July 28, 1982. The main contention is that the State of California has passed laws (Gov. Code, § 53071 and Pen. Code, § 12026) which preempt the field. Handgun control is a volatile issue of great public importance, invoking complex policy considerations. While we are sensitive to the political and social overtones of a case such as this, we are here concerned only with the narrow legal question of whether the state Constitution and state statutes permit San Francisco to enact such an ordinance. We conclude that they do not.

The ordinance in question provides that "[i]t shall be unlawful for any person to possess, within the City and County of San Francisco, any handgun" and that one violating the ordinance "shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by imprisonment in the county jail for not less than thirty (30) days nor

more than six (6) months." Though the law became effective July 28, 1982, it is not being enforced yet because it provides a 90-day grace period to permit residents to turn in to the police or otherwise relinquish their handguns. A number of persons are exempt from the ordinance, including peace officers, members of the military while engaged in the performance of their duties, persons using licensed target ranges, certain licensed collectors, certain licensed guards and special peace officers, and persons engaged in business and possessing handguns within fixed places of business.

The ordinance also exempts "[p]ersons who are authorized to carry handguns pursuant to Article 3 (commencing with Section 12050) of Chapter 1 of Title 2 of Part 4 of the Penal Code, and persons who are authorized to sell handguns pursuant to Penal Code section 12070." This particular exemption plays an important role in the arguments of the parties and will be discussed in detail below.

Several different principles are involved in the law of preemption. The two pertinent provisions of the California Constitution are article XI, section 7: "A county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws" and article XI, section 5, subdivision (a): "It shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws . . ."

If a matter is considered a "municipal affair," a charter city may regulate the subject even if its regulation conflicts with state law (*Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61-63 [81 Cal.Rptr. 465, 460 P.2d 137]; *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 292-293 [32 Cal.Rptr. 830, 384 P.2d 158]; *Long Beach Police Officers Assn.* v. *City of Long Beach* (1976) 61 Cal.App.3d 364, 371 [132 Cal.Rptr. 348]. However, in an area of statewide concern a local legislative body may act only if the state has not revealed an intention to occupy the field to the exclusion of all local regulation. (See *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 859 [76 Cal.Rptr. 642, 452 P.2d 930] and authorities cited therein.) In an area of statewide concern where the state has not occupied the field, local legislation can be sustained only when it does not conflict with general law. "Any local law that directly conflicts with state legislation is void." (*Galvan* v. *Superior Court, supra*, 70 Cal.2d at p. 856.)

*Municipal Affair*

The City and County of San Francisco (hereafter sometimes City and County) concedes that "it cannot be argued that the regulation of firearms is a municipal affair within the meaning of Article XI, Section 5, subdivision (a)," of the state Constitution. We agree. Clearly, the Handgun Ordinance, which prohibits possession by both residents and those passing through San Francisco, legislates in an area of statewide concern. (See *Professional Fire Fighters, Inc.* v. *City of Los Angeles, supra,* 60 Cal.2d at pp. 293-294, and cases cited therein; *Long Beach Police Officers Assn.* v. *City of Long Beach, supra,* 61 Cal.App.3d at p. 371.) It affects not just persons living in San Francisco, but transients passing through and residents of nearby cities where San Francisco's handguns might be sold.

*Preemption Generally*

Both petitioners and respondents agree that the state Legislature has preempted the fields of registration and licensing of handguns and their users. The main area of dispute concerns whether this preemption also applies to individual possession of handguns. The arguments are best understood through examination of the decision in *Galvan* v. *Superior Court, supra,* 70 Cal.2d 851.

In *Galvan*, the Supreme Court considered a petition for writ of mandate challenging a 1968 San Francisco gun law. The law provided for registration of all firearms within San Francisco, with certain exceptions. Galvan argued, inter alia, that the law was void because it was in direct conflict with Penal Code section 12026 and because of preemption by implication. Penal Code section 12026 is a part of the Dangerous Weapons' Control Act, originally enacted in 1917. (Stats. 1917, ch. 145, § 3, p. 221.) The law prohibits the carrying of handguns concealed within a vehicle or upon a person without a license. (Pen. Code, § 12025.) It establishes a procedure for seeking a permit from the sheriff of a county or police chief of a city upon a showing of good moral character and good cause for the issuance of a permit. (Pen. Code, § 12050.) The license so obtained "may include any reasonable restrictions or conditions which the issuing authority deems warranted, including restrictions as to the time, place, and circumstances under which the person may carry a concealed firearm." (Pen. Code, § 12050, subd. (b).)

Penal Code section 12026 itself provides: "Section 12025 shall not be construed to prohibit any citizen of the United States over the age of 18

years who resides or is temporarily within this State, and who is not within the excepted classes prescribed by Section 12021 [related to felons and narcotics addicts], from owning, possessing, or keeping within his place of residence or place of business any pistol, revolver, or other firearm capable of being concealed upon the person, *and no permit or license to purchase, own, possess, or keep any such firearm at his place of residence or place of business shall be required of him.*" (Italics added.)

In *Galvan*, the court concluded that section 12026 prohibited only licenses or permits, not registration requirements. The court drew a distinction between licensing, which regulates activity based on a determination of the personal qualifications of the licensee, and registration, which catalogs all persons with respect to an activity or all things that fall within certain classifications. (70 Cal.2d at p. 856.) "The Legislature, then, recognized precisely the distinction between 'registration' and 'licensing.' The Legislature intended that the right to possess a weapon at certain places could not be circumscribed by imposing any requirements, such as 'good moral character' (except the exclusions in Pen. Code, § 12025) upon the person possessing the weapon . . . . The Legislature used 'register' differently from 'license' or 'permit,' yet included in Penal Code section 12026 only the language 'no permit or license.'" (70 Cal.2d at p. 858.)

Following the *Galvan* decision the Legislature added Government Code section 9619 (Stats. 1969, ch. 1428, § 1) renumbered and amended in 1971 (Stats. 1971, ch. 438, § 95) to its present form as Government Code section 53071: "It is the intention of the Legislature to occupy the whole field of regulation of the registration or licensing of commercially manufactured firearms as encompassed by the provisions of the Penal Code, and such provisions shall be exclusive of all local regulations, relating to registration or licensing of commercially manufactured firearms, by any political subdivision as defined in Section 1721 of the Labor Code." Thus, in reaction to *Galvan* the Legislature expressly preempted the area of registration which San Francisco had attempted to enter.

The City and County of San Francisco argues that neither Government Code section 53071 nor Penal Code section 12026 bars it from enacting its handgun ordinance. Concerning Government Code section 53071, the City and County argues that it provides only that the state has preempted the areas of registration and licensing and says nothing about a local government's ability to regulate possession. The City and County notes that nothing in its ordinance establishes a permit system; the ordinance

imposes an outright ban on possession and merely exempts from its ban those who have received permits under state law. The City and County contends that an outright ban on possession is not a regulation related to registration or licensing. Concerning Penal Code section 12026, the City and County points to the introductory words—"'Section 12025 shall not be construed'"—and argues that section 12026 is intended merely to give advice concerning the construction of section 12025, not to create a right to possess a firearm or to preclude local governments from regulating possession. The City and County asserts that section 12026 merely prescribes a limitation upon the scope of the *state's* regulation of possession in the home or place of business.

### Express Preemption by Government Code Section 53071

In its argument that Government Code section 53071 does not preempt regulation of "possession" of handguns, the City and County relies upon the decisions in *People* v. *Commons* (1944) 64 Cal.App.2d Supp. 925 [148 P.2d 724]; *People* v. *Jenkins* (1962) 207 Cal.App.2d Supp. 904 [24 Cal.Rptr. 410]; and *Olsen* v. *McGillicuddy* (1971) 15 Cal.App.3d 897 [93 Cal.Rptr. 530]. *Commons* and *Jenkins* both involved a Los Angeles ordinance which made it illegal to possess a dangerous or deadly weapon in an automobile, whether or not the weapon was concealed and whether or not the weapon was possessed by the vehicle's owner or by a guest. The defendants argued that the Los Angeles ordinance was preempted by Penal Code section 12025's prohibition against possession of a *concealed* firearm within a vehicle *under the possessor's control*. The courts concluded that though there was some overlap between the state and local laws, the overlap was not fatal to the local ordinance. To the extent the local law duplicated state law, it could be ignored. Where it went beyond state regulation it was not preempted, because it neither contradicted state law nor regulated in an area where the state had left no room for local regulation. (See *Commons, supra,* 64 Cal.App.2d Supp. at pp. 929-935; adopted in *Jenkins, supra,* 207 Cal.App.2d Supp. at pp. 906-907.)

The City and County argues that the decisions in *Commons* and *Jenkins* demonstrate that the state Legislature has not preempted local governments from regulating firearm possession. *Olsen* v. *McGillicuddy, supra,* 15 Cal.App.3d 897, is cited as a post-*Galvan* reaffirmance of that fact. In *Olsen,* a civil complaint alleged injuries caused by a BB gun owned by the adult defendants and permissibly used by their minor son. The trial court excluded evidence of violation of a Petaluma ordinance banning possession and use of BB guns on the ground that the ordinance was preempted by

state law. On appeal, this division concluded that "the Legislature has not preempted the subject of the regulation of the use of BB guns by minors either directly or by implication." (15 Cal.App.3d at p. 902.)

The *Olsen* court noted that numerous state statutes dealt with firearms, but concluded: "Despite the wide coverage by the state on the subject of firearms, it does not follow that the state wished to exclude regulations by a municipality which considered more stringent regulation necessary in its particular community.

"In *Galvan* v. *Superior Court, supra,* 70 Cal.2d 851, 864, the court said: 'That problems with firearms are likely to require different treatment in San Francisco County than in Mono County should require no elaborate citation of authority. Such differences were recognized in *People* v. *Jenkins, supra,* 207 Cal.App.2d Supp. 904, 907 . . . , *People* v. *Commons, supra,* 64 Cal.App.2d Supp. 925, 932 . . . , and in *Gleason* v. *Municipal Court,* 226 Cal.App.2d 584, 587 . . . . The need for differential treatment of firearms was also recognized by the Legislature in section 25840 of the Government Code, which, as noted, authorizes counties to "prohibit and prevent the unnecessary . . . discharge of firearms . . . ." ' (See also *In re Hoffman,* 155 Cal. 144 . . . )

"Following *Galvan,* The Legislature in 1969 enacted Government Code section 9619 and made clear its intent 'to occupy the whole field of regulation of the *registration or licensing of . . . firearms,* . . . ' (Italics added.) Despite the opportunity to include an expression of intent to occupy the entire field of firearms, the legislative intent was *limited to* registration and licensing. We infer from this limitation that the Legislature did not intend to exclude municipalities from enacting further legislation concerning the use of firearms." (15 Cal.App.3d at p. 902.)

We agree with the City and County's assessment that these decisions suggest that the Legislature has not prevented local governmental bodies from regulating all aspects of the possession of firearms. However, the more troubling question is whether the San Francisco Handgun Ordinance merely regulates possession or instead constitutes a licensing ordinance in violation of the express preemption of Government Code section 53071.

The San Francisco ordinance does not mention the word "license" or "permit" and it does not establish a licensing procedure of any kind (unlike the ordinance struck in *Sippel* v. *Nelder* (1972) 24 Cal.App.3d 173 [101 Cal.Rptr. 89]. However, it exempts from the general ban on possession any person authorized to carry a handgun pursuant to Penal

Code section 12050. Thus, its effect is to create a new class of persons who will be required to obtain licenses in order to possess handguns. Persons presently possessing handguns in their homes who are not licensed to carry their weapons must obtain licenses or relinquish their handguns. Persons who could have purchased handguns for home possession under prior law are required under the San Francisco ordinance to enter the permit system.

The City and County of San Francisco argues that its ordinance merely acknowledges the supremacy of state law in the area of permits and licenses and exempts state-licensed persons from the local regulation. It is true that in form that is all the San Francisco Handgun Ordinance purports to do. However, it is also true that in substance it creates a licensing requirement where one had not previously existed. It violates the Legislature's statement of intention that the provisions of the Penal Code "shall be exclusive of all local regulations, *relating to* registration or licensing of commercially manufactured firearms, . . ." (Italics added.) If not a direct licensing requirement, the San Francisco Handgun Ordinance is at least a local regulation *relating to licensing.* [1]

### Conflict With Penal Code Section 12026

Even if we were to read Government Code section 53071 as narrowly as the City and County would like, we would still be confronted by the argument that the San Francisco Handgun Ordinance conflicts with Penal Code section 12026. If the state has not preempted the field, the local ordinance is nonetheless invalid if it conflicts with a law passed by the state Legislature. (*Galvan* v. *Superior Court, supra,* 70 Cal.2d at p. 865.)

We agree with the City and County that the first portion of Penal Code section 12026 suggests that the section is intended to insure that Penal Code section 12025 is not misread as outlawing any form of possessing a firearm in a place of residence or place of business. The introduction states that "[s]ection 12025 shall not be construed" so broadly. However, the final part does not use the phraseology of the first portion. It does not say "nor shall section 12025 be construed as imposing a permit requirement." It says "and no permit or license . . . shall be required."

---

[1] We note that *Commons* and *Jenkins* were decided before adoption of Government Code section 53071 and that in *Olsen*, the court did not state that the area of "possession" was not preempted, only that the area of "use" was not expressly preempted. Thus none of the three courts considered the relationship between a ban on possession and the licensing requirement it implicitly creates if it exempts licensed persons from the ban.

In order to read Penal Code section 12026 so as not to conflict with the San Francisco Handgun Ordinance, we would be required to alter the final portion of the statute to provide: "and no *State* permit or license . . . shall be required of him." The plain wording of the statute is broader. "No permit or license" means "no permit or license." It would torture the plain words of the statute to apply the meaning sought by San Francisco.[2] As explained above, the San Francisco Handgun Ordinance does create a license requirement for one seeking to possess a handgun at home, and therefore conflicts with Penal Code section 12026.

### Implied Preemption

If we were to find in the San Francisco Handgun Ordinance no "licensing" requirement within the express wording of Government Code section 53071 and Penal Code section 12026, we would still reach the conclusion that state law preempts the San Francisco ordinance under the theory of implied preemption. It is at least arguable that the state Legislature's adoption of numerous gun regulations has not impliedly preempted *all areas* of gun regulation. (See *Galvan, supra,* 70 Cal.2d at p. 860.) However, we infer from Penal Code section 12026 that the Legislature intended to occupy the field of residential handgun possession to the exclusion of local governmental entities. A restriction on requiring permits and licenses necessarily implies that possession is lawful without a permit or license. It strains reason to suggest that the state Legislature would prohibit licenses and permits but allow a ban on possession.

Let a peremptory writ of mandate issue directing respondents to refrain from enforcing the San Francisco Handgun Ordinance and to provide suitable notice to the residents of San Francisco that the ordinance will not be enforced. Petitioners' requests for attorney's fees are denied.

Feinberg, J., and Barry-Deal, J., concurred.

Petitions for a rehearing were denied October 28 and November 9, 1982. Respondents' petitition for a hearing by the Supreme Court was denied January 27, 1983.

---

[2]The City and County cites *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121, 132 [155 Cal.Rptr. 435], for the principle that we should indulge a presumption in favor of the validity of the local ordinance. However, as we read *Gluck,* it applies to implied preemption, not to express preemption or conflict between state and local law. Even were we to indulge a presumption in favor of the local ordinance, we would find it expressly preempted, in direct conflict with state law, and impliedly preempted.