TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | |
|---|---|
| OPINION | : |
| | :     No. 94-212 |
| of | : |
| | :     July 7, 1994 |
| DANIEL E. LUNGREN | : |
| Attorney General | : |
| | : |
| GREGORY L. GONOT | : |
| Deputy Attorney General | : |
| | : |

_____

THE HONORABLE VICTOR J. KALETA, CITY PROSECUTOR, CITY OF PASADENA, has requested an opinion on the following question:

Does state law preempt the adoption of a city ordinance which makes it a misdemeanor to sell .22 to .45 caliber ammunition within the boundaries of the city and requires ammunition vendors within the city to record and maintain identification information with respect to each purchaser?

CONCLUSION

State law preempts the adoption of a city ordinance which makes it a misdemeanor to sell .22 to .45 caliber ammunition within the boundaries of the city but does not preempt adoption of a city ordinance which requires ammunition vendors within the city to record and maintain identification information with respect to each purchaser.

ANALYSIS

We are informed that a city council is considering the adoption of an ordinance regulating the sale of ammunition within the boundaries of the city. It would prohibit the sale of certain kinds of ammunition commonly used in semi-automatic weapons, i.e., .22 to .45 caliber ammunition. For ammunition sales not subject to the total ban, it would require ammunition dealers to record and maintain identification information obtained from each purchaser. The stated purposes of the ordinance would be to reduce the number of gun-related offenses committed within the city's boundaries, often by teen-age gang members, and to facilitate the investigation of such criminal offenses. We conclude that the proposed ordinance would be preempted by state law with respect to the prohibited sales provision but not with respect to the record keeping requirements.

Under article XI, section 7 of the Constitution, "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in

conflict with general laws."  As explained by the Supreme Court in *Candid Enterprises, Inc.* v. *Grossmont Union High School District* (1985) 39 Cal.3d 878, 885:  "Counties and cities have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law."  Except for this limitation, the police power authority of a county or city "is as broad as the police power exercisable by the Legislature itself." (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140.)

In *Sherwin-Williams Company* v. *City of Los Angeles* (1993) 4 Cal.4th 893, the Supreme Court recently reaffirmed the basic principles to be applied in determining whether the state's general laws preempt a particular local ordinance.  Quoting from its prior decisions, the court stated:

"`If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.'  [Citations.]

"`A conflict exists if the local legislation "duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication."'  [Citations.]

"Local legislation is `duplicative' of general law when it is coextensive therewith. (See *In re Portnoy* (1942) 21 Cal.2d 237, 240 [finding `duplication' where local legislation purported to impose the same criminal prohibition that general law imposed].)

"Similarly, local legislation is `contradictory' to general law when it is inimical thereto.  (See *Ex parte Daniels* (1920) 183 Cal. 636, 641-648 [finding `contradiction' where local legislation purported to fix a lower maximum speed limit for motor vehicles than that which general law fixed].)

"Finally, local legislation enters an area that is `fully occupied' by general law when the Legislature has expressly manifested its intent to `fully occupy' the area [citations] or when it has impliedly done so in light of one of the following indicia of intent:  `(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the' locality [citations]." (*Id*., at p. 897.)

To properly apply these principles to the question presented, we must determine the relevant "field" within the general area of dangerous weapons control that would be addressed by the proposed ordinance. (See *Candid Enterprises, Inc.* v. *Grossmont Union High School District, supra,* 39 Cal.3d at 886, fn. 4 ["How the relevant field occupied by the . . . preemptive state legislation is defined is often crucial to the result"].)  In *Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 707-708, the court defined a preemptive field as follows: "A potentially preemptive `field' of state regulation is `an area of legislation which includes the subject of the local legislation, and is sufficiently logically related so that a court, or a local legislative body, can detect a patterned approach to the subject."'

Preliminarily, we note that with regard to *firearms registration* and *licensing*, the Legislature has explicitly preempted the adoption of local ordinances. Government Code section 53071 provides:

"It is the intention of the Legislature to occupy the whole field of regulation of the registration or licensing of commercially manufactured firearms as encompassed by the provisions of the Penal Code, and such provisions shall be exclusive of all local regulations, relating to registration or licensing of commercially manufactured firearms, by any political subdivision as defined in Section 1721 of the Labor Code."[1]

As to the *firearms possession* at one's residence, business, or other property, state law has also preempted the field. (*Doe* v. *City and County of San Francisco* (1982) 136 Cal.App.3d 509, 518; *Sippel* v. *Nelder* (1972) 24 Cal.App.3d 173, 176-177; 65 Ops.Cal.Atty.Gen. 457, 464 (1982).) Penal Code section 12026, subdivision (a)[2] states:

"Notwithstanding section 12025 [providing penalties for carrying a concealed weapon without a license], any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Section 12021, shall not be prohibited from owning, possessing, keeping, or carrying, either openly or concealed, anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident any pistol, revolver, or other firearm capable of being concealed upon the person, and no permit or license to purchase, own, possess, keep, or carry, either openly or concealed, any such firearm within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, shall be required of the citizen or legal resident."

As to *firearms use*, however, the state has not preempted the field. (*Doe* v. *City and County of San Francisco, supra,* 136 Cal.App.3d at 515-517; *Olsen* v. *McGillicuddy* (1971) 15 Cal.App.3d 897, 902 ["the Legislature did not intend to exclude municipalities from enacting further legislation concerning the use of firearms"].)

Regarding the area of *firearms sales,* we find that the Legislature has enacted a comprehensive and detailed regulatory scheme (§§ 12070-12084) which requires the licensing of firearms dealers, places numerous restrictions on firearms sales, and mandates the furnishing of identification information by each purchaser. The state has so thoroughly occupied this field that we have no doubt that regulating firearms sales is beyond the reach of local governments. (See *Fisher* v. *City of Berkeley, supra,* 37 Cal.3d at 707-708.) Cities and counties have been charged with the execution of the state's program for the licensing of firearms dealers, but their role is ministerial in nature. (§ 12071.)

With respect to the regulation of *ammunition sales*, we find the following laws to be specifically applicable: section 12020 (sale of ammunition containing a flechette dart; sale of bullets containing an explosive agent), section 12304 (sale of ammunition of a caliber greater than .60

---

[1]Labor Code 1721 provides: "`Political subdivision' includes any county, city, district, public housing authority, or public agency of the state, and assessment or improvement districts."

[2]All references hereafter to the Penal Code are by section number only.

caliber), and section 12321 (sale of handgun ammunition designed to penetrate metal or armor). A few additional statutes address the possession, but not sale, of ammunition. (See, e.g., §§ 186.22a [possession of ammunition by a member of a criminal street gang]; 12101 [possession of ammunition by a minor without parental consent]; 12320 [possession of handgun ammunition designed primarily to penetrate metal or armor].)

It is apparent that the Legislature has treated the sale of ammunition separately from that of firearms sales, registration, licensing, possession, or use. The purchase of ammunition and the purchase of a firearm need not take place at the same time or involve the same considerations. Just as the various aspects of firearms control have been treated differently in the legislative schemes, we believe that the sale of ammunition constitutes a separate field for purposes of applying state preemption principles. Accordingly, we will examine in turn each of the criteria for determining possible state preemption as to matters which fall within the field of ammunition sales.

A.      Duplication

With respect to ammunition used in semi-automatic handguns and not designed primarily to penetrate metal or armor, there would be no duplication of any state law by the proposed ordinance. The proscribed ammunition in question would be substantially smaller than the "greater than .60 caliber" ammunition prohibited by section 12304. Registration aspects of the proposed ordinance would parallel the registration requirements for the sale of firearms as contained in sections 12071 and 12077, but inasmuch as ammunition may be purchased separately and is not specifically mentioned in these statutes, there would be no duplication of any state law as to this matter either.

B.      Contradiction

There is no statutorily established right to sell or purchase ammunition. Neither is there any state provision directly proscribing the registration of ammunition or ammunition sales. "[T]he ordinance does not prohibit what the statute commands or command what it prohibits." (*Sherwin-Williams Co.* v. *City of Los Angeles*, *supra*, 4 Cal.4th at 902.) Therefore, the proposed ordinance would not contradict any state statute.[3]

---

[3]Although Congress has legislated in the area of ammunition sales (18 U.S.C. § 921 et seq.), local ordinances such as the one in question would not be preempted under the terms of the federal legislation. (See *C.D.M. Products, Inc.* v. *City of New York* (1973) 350 N.Y.S.2d 500.) The federal law provides:

"No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together." (18 U.S.C. § 927.)

C.      Express Reservation

As previously indicated, the only express preemptive intent in connection with the control of deadly weapons is limited to the subjects of registration and licensing of firearms. (Gov. Code, § 53071.) In *Doe* v. *City and County of San Francisco, supra*, 136 Cal.App.3d 509, the court noted: "Despite the opportunity to include an expression of intent to occupy the entire field of firearms, the legislative intent was *limited* to registration and licensing." (*Id*., at p. 516.) Just as the Legislature has not expressly stated an intent to occupy the field of firearms sales, it has not stated such an intent with respect to the field of ammunition sales.

D.      Implied Exclusion

In the *Doe* v. *City and County of San Francisco, supra,* 136 Cal.App.3d 509, the court stated:

". . . It is at least arguable that the state Legislature's adoption of numerous gun regulations has not impliedly preempted *all areas* of gun regulation. [Citation.] However, we infer from Penal Code section 12026 that the Legislature intended to occupy the field of residential handgun possession to the exclusion of local governmental entities. A restriction on requiring permits and licenses necessarily implies that possession is lawful without a permit or license. It strains reason to suggest that the state Legislature would prohibit licenses and permits but allow a ban on possession." (*Id*., at p. 518.)

Similarly, we find that the Legislature has partially covered the field of ammunition sales and has indicated in section 12026 that a paramount state concern will not tolerate further local action such as the proposed sales ban in question. The Legislature has expressly banned the sale of ammunition larger than .60 caliber. (§ 12304.) It has not banned smaller caliber ammunition as the proposed ordinance would.[4]

In light of section 12026, which recognizes the right of an individual "to purchase, own, possess, keep, or carry" pistols, revolvers, and concealable firearms on one's own private property, it is understandable why the Legislature has not banned the sale of smaller caliber ammunition. A local ban on the sale of handgun ammunition would thwart the Legislature's recognition of the right to possess handguns on private property. Clearly what the Legislature had in mind when it enacted section 12026 was the possession of a handgun that could be used for its intended purpose. Accordingly, we conclude that the language of sections 12026 and 12304, construed together, precludes a local entity from prohibiting the sale of handgun ammunition.

On the other hand, the record keeping duties of the proposed ordinance would not materially affect handgun possession. No statute appears to prohibit, directly or indirectly, a city from requiring ammunition purchasers to provide identification information. (See *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851, 864; *Gluck* v. *County of Los Angeles* (1979) 93 Cal.App.3d 121, 131; Comment, *The California City Versus Preemption by Implication* (1966) 17 Hastings L.J. 603, 610.) On the basis of all three tests for implied preemption, we conclude that the record keeping portion of the proposed ordinance would not be preempted by general law.

_____

[4]We understand that .22 to .45 caliber ammunition is the basic ammunition for semi-automatic handguns, single shot weapons, and some rifles.

In answer to the question presented, therefore, we conclude that state law preempts the adoption of a city ordinance which makes it a misdemeanor to sell .22 to .45 caliber ammunition within the boundaries of the city but does not preempt the adoption of a city ordinance which requires ammunition vendors within the city to record and maintain identification information with respect to each purchaser.

\* \* \* \* \*