[No. A073743. First Dist., Div. One. Sept. 16, 1997.]

EDGAR S. SUTER et al., Plaintiffs and Appellants, v.
CITY OF LAFAYETTE et al., Defendants and Respondents.

**COUNSEL**

Don B. Kates and C. D. Michel for Plaintiffs and Appellants.

Charles J. Williams, Teresa L. Highsmith, Eric Gorovitz, Landels, Ripley & Diamond, R. Morgan Gilhuly, Evan, Latham, Harris & Campisi and Jamie O. Harris for Defendants and Respondents.

Richards, Watson & Gershon and Terence R. Boga as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**STEIN, J.**—Appellants Edgar S. Suter et al. appeal from a judgment entered after the superior court sustained a demurrer without leave to amend to their consolidated complaint and petition for writ of mandate. They also appeal from a postjudgment order denying their request for attorney fees.

The City of Lafayette enacted an ordinance requiring persons seeking to sell, transfer or lease weapons[1] to obtain land use permits and police permits in addition to the licenses already required by state and federal law. Appellants contend that the ordinance is preempted by state law and that it violates constitutional principles of equal protection and due process. We find that local governments are not generally excluded by state law from imposing additional licensing requirements on firearm dealers. We further find that with one exception, the specific provisions at issue here do not conflict with, duplicate, or enter into a field fully occupied by state law and are not, therefore, preempted. We find that provisions such as those at issue here are well within the police powers granted municipalities and that they meet constitutional requirements for equal protection and due process. We will affirm the judgment except as it upholds the validity of Lafayette Municipal Code section 8-609, which we find to be preempted by state law.

We also reject appellants' challenges to the order denying attorney fees, and affirm that order.

## BACKGROUND

The City of Lafayette adopted ordinance No. 433, amending and adding to the Lafayette Municipal Code so as to restrict the areas in which firearms may be sold and to impose licensing requirements on their sale. Pursuant to local law, firearm dealerships are confined to certain commercially zoned areas. In addition, firearm dealers are prohibited from selling, leasing or transferring weapons without first obtaining both a land use permit and a police permit. (Lafayette Mun. Code, § 6-533(b).) A dealer seeking to obtain or renew a police permit is required to file an application with the chief of police, providing a variety of information such as name, address, age and

---

[1]For convenience we will refer to such persons, generally, as "firearm dealers."

proof of compliance with all federal and state licensing laws. (*Id.*, § 8-606.) The police chief is directed to conduct an appropriate investigation of the applicant to determine for the protection of the public safety whether a permit may be issued. (*Id.*, § 8-607.) The issuance of a permit is subject to a number of conditions, several of which are relevant to the issues on appeal and will be discussed in further detail below. Lafayette Municipal Code section 8-608 requires firearm dealers to sell, lease or transfer a trigger lock or similar device with every firearm sold, leased or transferred. Lafayette Municipal Code section 8-609 requires that the sale of firearms be operated out of a secured facility, and specifies the security measures that must be taken. Lafayette Municipal Code section 8-610 requires the applicant to obtain a policy of insurance as specified by the code. If the code's provisions are met and if the applicant also complies with all applicable federal, state and local laws, the police department may grant a police permit to the applicant. The police permit expires one year after issuance, but may be renewed annually. (*Id.*, § 8-611.) Finally, the code specifies the grounds upon which an application shall be denied, and provides for review of any decision by the police chief to deny or revoke a permit. (*Id.*, §§ 8-612, 8-613, 8-614.)

In determining if a land use permit should be issued, the planning commission is directed to consider if the location of the business is compatible with other existing uses in close proximity, and if the proposed use is architecturally compatible with other existing uses in the vicinity, taking into account the requirements for issuance of a police permit that firearm sales be conducted out of a secured facility. (Lafayette Mun. Code, § 6-533(d).) Firearm dealers in a residential zone as of the effective date of ordinance No. 433 are permitted to continue operations as a nonconforming use, provided they obtain a police permit and business registration within 60 days.

Appellants are persons affected by ordinance No. 433 in that they sell firearms out of their residences, wish to purchase firearms in zones other than those specified by ordinance No. 433 or otherwise are concerned that Lafayette's laws will restrict their ability to sell or purchase firearms. They challenged ordinance No. 433 by filing a petition for writ of mandamus and a complaint, seeking equitable and declaratory relief. Prior to any judicial review of the matter, Lafayette amended ordinance No. 433, effectively mooting appellants' first nine causes of action. The trial court sustained a demurrer to appellants' complaint without leave to amend, and entered judgment dismissing the action in its entirety. Appellants nonetheless sought attorney fees pursuant to California's private attorney general statute, Code of Civil Procedure section 1021.5, claiming that they were the catalyst for the amendment that mooted their first nine causes of action. The court rejected appellants' argument and denied their request for fees.

DISCUSSION

I.

*State Preemption of Local Laws*

■ California Constitution article XI, section 7, confers on a city such as Lafayette the power to "make and enforce within its limits all local, police, sanitary, and other ordinances and regulations not in conflict with general laws." Thus, "[u]nder the police power granted by the Constitution, counties and cities have plenary authority to govern, subject only to the limitation that they exercise this power within their territorial limits and subordinate to state law. (Cal. Const., art. XI, § 7.) Apart from this limitation, the 'police power [of a county or city] under this provision . . . is as broad as the police power exercisable by the Legislature itself.' (*Birkenfeld* v. *City of Berkeley* (1976) 17 Cal.3d 129, 140 [130 Cal.Rptr. 465, 550 P.2d 1001].)" (*Candid Enterprises, Inc.* v. *Grossmont Union High School Dist.* (1985) 39 Cal.3d 878, 885 [218 Cal.Rptr. 303, 705 P.2d 876].) ■ Local legislation that conflicts with state law, however, is preempted by such law and is void. (*Sherwin-Williams Co.* v. *City of Los Angeles* (1993) 4 Cal.4th 893, 897 [16 Cal.Rptr.2d 215, 844 P.2d 534]; *Candid Enterprises, Inc.* v. *Grossmont Union High School Dist., supra,* 39 Cal.3d 878, 885.) " 'A conflict exists if the local legislation " 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.' " ' " (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at p. 897.)

■ The state Legislature has chosen to prohibit local government from enacting certain types of weapons legislation. Penal Code section 12026, for example, specifically and expressly prohibits local governments from requiring citizens or legal residents to obtain local licenses to "purchase, own, possess, keep, or carry" specified firearms anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or possessed by such person. The state Legislature also has expressed an intent fully to occupy other specific areas of weapons control. Government Code section 53071 thus provides: "It is the intention of the Legislature to occupy the whole field of regulation of the registration or licensing of commercially manufactured firearms as encompassed by the provisions of the Penal Code, and such provisions shall be exclusive of all local regulations, relating to registration or licensing of commercially manufactured firearms, by any political subdivision . . . ." Government Code section 53071.5 similarly states an intent fully to occupy the "whole field of

regulation of the manufacture, sale, or possession of *imitation* firearms
. . . ." (Italics added.)

Whether the state law has preempted Lafayette's local laws depends on whether there is legislation prohibiting local governments from requiring local licenses or permits from persons wishing to sell, lease or transfer firearms, or an expression by the Legislature of its intent to fully occupy that field.[2] Support for the conclusion that the Legislature has intended to preempt only narrow areas of firearms control has been found in the fact that statutes such as Penal Code section 12026 would be redundant if the state had intended to preempt the entire field of weapons' control. (*Galvan* v. *Superior Court, supra*, 70 Cal.2d at p. 860.) That state law tends to concentrate on specific areas, leaving unregulated other substantial areas relating to the control of firearms, indicates an intent to permit local governments to tailor firearms legislation to the particular needs of their communities. (*Id.* at pp. 862-863.) "That problems with firearms are likely to require different treatment in San Francisco County than in Mono County should require no elaborate citation of authority." (*Id.* at p. 864.) In addition, a significant factor in determining if the Legislature intends to preempt an area of law is the impact that local regulation may have on transient citizens of the state. (*In re Hubbard* (1964) 62 Cal.2d 119, 128 [41 Cal.Rptr. 393, 396 P.2d 809], overruled on another point, *Bishop* v. *City of San Jose* (1969) 1 Cal.3d 56, 61, 63, fn. 6 [81 Cal.Rptr. 465, 460 P.2d 137]; *Galvan* v. *Superior Court, supra*, 70 Cal.2d at p. 860.) Laws designed to control the sale, use or possession of firearms in a particular community have very little impact on transient citizens, indeed, far less than other laws that have withstood preemption challenges. (See *Galvan* v. *Superior Court, supra*, at pp. 864-865.) Finally, the Legislature's response to cases upholding local weapons legislation against a preemption challenge itself is persuasive evidence that it has no intention of preempting areas of weapons laws not specifically addressed by state statute. When the Legislature has enacted laws designed to regulate areas earlier found by the courts to have been unregulated by state law, it has declined to declare an intent to preempt broad areas of

---

[2]It could be, and has been, argued that Government Code section 53071 is itself an expression of intent to occupy the whole field of firearm regulation. However, the cases uniformly construe state regulation of firearms narrowly, finding no preemption of areas not specifically addressed by state law. (E.g., *Galvan* v. *Superior Court* (1969) 70 Cal.2d 851 [76 Cal.Rptr. 642, 452 P.2d 930] [legislation prohibiting licensing of firearms does not preclude local government from registering firearms]; *Olsen* v. *McGillicuddy* (1971) 15 Cal.App.3d 897 [93 Cal.Rptr. 530] [legislation preempting area of licensing and registration of firearms does not preempt local government from regulating the use of firearms]; *Doe* v. *City and County of San Francisco* (1982) 136 Cal.App.3d 509, 516 [186 Cal.Rptr. 380] [legislative response to case law suggests "that the Legislature has not prevented local governmental bodies from regulating all aspects of the possession of firearms."].)

firearms control. In each instance the Legislature instead has enacted narrowly drawn legislation limited to the particular area earlier found unregulated by the courts, legislation that would be unnecessary if the Legislature intended the entire field to be preempted.[3]

Penal Code sections 12070 and 12071 do impose state licensing requirements on persons wishing to sell, lease or transfer firearms, but we do not read their provisions as excluding local governments from imposing additional licensing requirements on such persons. Section 12070 prohibits a person from selling, leasing or transferring firearms unless such person has been issued a state license pursuant to section 12071. Section 12071 states the requirements for issuance of state licenses. Although section 12071 requires local governments to administer its provisions, it contains no language specifically prohibiting local governments from imposing their own licensing requirements. It thus contrasts sharply with Penal Code section 12026, which clearly and unequivocally prohibits local governments from requiring licenses to "purchase, own, possess, keep, or carry" specified firearms. Indeed, far from prohibiting local licensing requirements, section 12071 expressly provides for that possibility, and further provides that in the event of certain conflicts between local requirements and state requirements,

---

[3]As of 1969, the Legislature had enacted Penal Code section 12026, providing in part that no permit or license to purchase, own, possess or keep firearms might be required of persons over 18 years old and not within certain specifically excepted classes. The court in *Galvan* v. *Superior Court, supra,* 70 Cal.2d 851 found that in regulating licensing, section 12026 did not preempt local laws regulating *registration* of firearms, notwithstanding the similarities between licensing and registration. (70 Cal.2d at pp. 856-859.) The *Galvan* court thus gave section 12026's expression of Legislative intent the narrowest possible construction. The Legislature could have responded to *Galvan* by declaring its intent to occupy the entire field of firearm control. It did not do so, instead enacting Government Code section 9619, later recodified as Government Code section 53071, by which it extended the area of its exclusive control to "registration and licensing." The court in *Olsen* v. *McGillicuddy, supra,* 15 Cal.App.3d 897, later found that section 9619 should not be construed as an expression of intent to exclude municipalities from enacting further legislation concerning the *use* of firearms. (15 Cal.App.3d at p. 902.) That court accordingly found valid a local ordinance prohibiting the discharge within city limits of rifles, including BB guns. The Legislature again declined to respond to a narrow judicial construction of its stated intent by declaring an intent to occupy the entire area of firearm control. Instead, it enacted Government Code section 53071.5 by which it stated its intent to preempt "all regulations relating to the manufacture, sale, or possession of imitation firearms, including regulations governing the manufacture, sale, or possession of BB guns and air rifles . . . ." In *Doe* v. *City and County of San Francisco, supra,* 136 Cal.App.3d at page 516, the Legislature was again invited to declare that its actual intent was to occupy a broad area of firearms control and again declined to make any such declaration. The court there struck down an ordinance prohibiting possession of handguns, finding that it was in fact preempted by state law, but noting that the decisions discussed above "suggest that the Legislature has not prevented local governmental bodies from regulating all aspects of the possession of firearms." Although the *Doe* court, like the courts in the earlier cases, essentially invited the Legislature to state an intent to preempt local legislation in the area of firearm control, the Legislature has not responded to that invitation.

state requirements should give way. Subdivision (a)(1) defines a person licensed under section 12071 as a person who, among other things, "has any *regulatory or business license, or licenses, required by local government.*" (Pen. Code, § 12071, subd. (a)(1), italics added.) Subdivision (a)(6) requires the state license to be in one of several forms, including: "(A) In the form prescribed by the Attorney General. (B) A regulatory or business license that states on its face 'Valid for Retail Sales of Firearms' and is endorsed by the signature of the issuing authority. (C) A letter from the duly constituted licensing authority having primary jurisdiction for the applicant's intended business location *stating that the jurisdiction does not require any form of regulatory or business license or does not otherwise restrict or regulate the sale of firearms.*" (*Id.*, subd. (a)(6), italics added.) Subdivision (d) authorizes local licensing authorities to grant exemptions from compliance with section 12071's provisions regulating the storage of firearms "if the licensee is unable to comply with those requirements because of *local ordinances, covenants, lease conditions, or similar circumstances* not under the control of the licensee." (*Id.*, subd. (d), italics added.) These provisions would be meaningless if local agencies have no authority to require their own regulatory or business licenses, or otherwise to restrict or regulate the sale of firearms. ▬ There can be no implied preemption of an area where state law expressly allows supplementary local legislation. (See *Korean American Legal Advocacy Foundation* v. *City of Los Angeles* (1994) 23 Cal.App.4th 376, 394 [28 Cal.Rptr.2d 530].)

Appellants point out that the Attorney General has stated, "The state has so thoroughly occupied this field [of firearms sales] that we have no doubt that regulating firearms sales is beyond the reach of local governments. [Citation.] Cities and counties have been charged with the execution of the state's program for the licensing of firearms dealers, but their role is ministerial in nature." (77 Ops.Cal.Atty.Gen. 147, 150 (1994).) Even were we bound by the Attorney General's opinion, and we are not, we would not be bound by the cited statement. The Attorney General was asked to issue an opinion as to the validity of a local ordinance prohibiting the sale of certain kinds of ammunition commonly used in semiautomatic weapons, and requiring ammunition dealers to record and maintain identification information obtained from purchasers. The opinion concluded that the proposed ordinance impliedly was preempted insofar as it banned sales of ammunition because the Legislature (1) had partially entered the field of ammunition sales by banning sales of certain other types of ammunition, and (2) in enacting Penal Code section 12026, had expressed an intent that there should be no local interference with the rights of persons to purchase a variety of weapons, including those using ammunition banned by the ordinance. The statement asserted here by appellants was unpersuasive dicta, unnecessary to the Attorney General's conclusion. (See *Harris* v. *Capital Growth Investors*

*XIV* (1991) 52 Cal.3d 1142, 1157 [278 Cal.Rptr. 614, 805 P.2d 873]; *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 1003-1004 [275 Cal.Rptr. 201, 800 P.2d 557]; *People* v. *Superior Court* (*Williams*) (1992) 8 Cal.App.4th 688, 703 [10 Cal.Rptr.2d 873]; and see 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 945, p. 986, and authorities cited there.)

An opinion of the Legislative Counsel, also cited by appellants, is even less persuasive. The Legislative Counsel was asked whether an ordinance banning the sale of so-called "Saturday Night Specials" would be valid. The Legislative Counsel concluded that the state had preempted the area of type of firearms that might be sold, finding, moreover, that Penal Code section 12026 demonstrated a Legislative intent to authorize possession of any weapon not specifically banned by state law. The opinion does not address the question of local licensing of firearm dealerships. It addresses the types of firearms dealers are entitled to sell, and therefore it bears no relevance to the present conflict. (See Ops. Cal. Legis. Counsel, No. 33428 (Nov. 30, 1995) Firearms: Local Ordinances.)

 We conclude that state law does not preempt the broad field of sales of firearms or regulation of firearm dealers. Specific provisions of Lafayette's local laws may yet be preempted, however, if they contradict or duplicate state law, or if they enter a specific area that the state intends fully to occupy. (*Bravo Vending* v. *City of Rancho Mirage* (1993) 16 Cal.App.4th 383, 396-397 [20 Cal.Rptr.2d 164].)

We turn to the specific provisions of which appellants complain: Lafayette Municipal Code sections 8-609 and 8-608.

A. *Security Measures for Storage of Firearms*

Penal Code section 12071, subdivision (b)(14) requires dealers to employ one of three specified methods for storing firearms:

"(A) Store the firearm in a secure facility that is part of, or constitutes, the licensee's business premises.

"(B) Secure the firearm with a hardened steel rod or cable of at least one-eighth inch in diameter through the trigger guard of the firearm. The steel rod or cable shall be secured with a hardened steel lock that has a shackle. The lock and shackle shall be protected or shielded from the use of a bolt cutter and the rod or cable shall be anchored in a manner that prevents the removal of the firearm from the premises.

"(C) Store the firearm in a locked fireproof safe or vault in the licensee's business premises."

Penal Code section 12071, subdivision (b)(15) provides that local licensing agencies in areas of low- population density "may impose the requirements specified in paragraph (14)." Subdivision (c)(3) of section 12071 defines a "secure facility" in detail.[4]

Lafayette Municipal Code section 8-609 requires dealers to employ two of the three alternatives set forth in Penal Code section 12071, subdivision (b)(14). Thus, it requires dealers to keep firearms in a secure facility, using essentially the same definition of secure facility as does the Penal Code, *and* to store firearms by securing them with a lock through the trigger guard or storing them in a locked fireproof safe or vault or by storing them out of the reach of customers in secure, locked facilities approved by the police.
Appellants contend that Lafayette Municipal Code section 8-609 is preempted by state law. We agree, finding that it enters into a field of regulation from which the state implicitly has excluded all other regulatory authority. In making that determination, we find useful the four-part test stated in *Bravo Vending* v. *City of Rancho Mirage, supra*, 16 Cal.App.4th at page 397: "(1) Does the ordinance duplicate any state law? (2) Does the ordinance contradict any state law? (3) Does the ordinance enter into a field of regulation which the state has expressly reserved to itself? (4) Does the ordinance enter into a field of regulation from which the state has implicitly excluded all other regulatory authority?"

An ordinance duplicates state law if it is coextensive with state law. (*Sherwin-Williams Co.* v. *City of Los Angeles, supra*, 4 Cal.4th at p. 897.) Lafayette Municipal Code section 8-609, although echoing the provisions of Penal Code section 12071, is not coextensive with it. Rather, it increases the storage requirements set forth in the Penal Code.

---

[4]Penal Code section 12071, subdivision (c)(3) provides:
"As used in this section, a 'secure facility' means a building that meets all of the following specifications:
"(A) All perimeter doorways shall meet one of the following:
"(i) A windowless steel security door equipped with both a dead bolt and a doorknob lock.
"(ii) A windowed metal door that is equipped with both a dead bolt and a doorknob lock. If the window has an opening of five inches or more measured in any direction, the window shall be covered with steel bars of at least one-half inch diameter or metal grating of at least nine gauge affixed to the exterior or interior of the door.
"(iii) A metal grate that is padlocked and affixed to the licensee's premises
"independent of the door and doorframe.
"(B) All windows are covered with steel bars.
"(C) Heating, ventilating, air-conditioning, and service openings are secured with steel bars, metal grating, or an alarm system.
"(D) Any metal grates have spaces no larger than six inches wide measured in any direction.
"(E) Any metal screens have spaces no larger than three inches wide measured in any direction.
"(F) All steel bars shall be no further than six inches apart."

An ordinance contradicts state law if it is inimical to state law; i.e., it penalizes conduct that state law expressly authorizes or permits conduct which state law forbids. (*Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at p. 898; *Bravo Vending* v. *City of Rancho Mirage, supra,* 16 Cal.App.4th at pp. 396-397.) It is perfectly possible for a firearm dealer to comply both with Lafayette Municipal Code section 8-609 and state law. Indeed, by complying with section 8-609 a dealer automatically complies with state law. A contradiction also occurs when "the passage of the ordinance itself contradicts the Legislature's intent, expressly stated in the statute, that no local government shall regulate conduct within that same 'field' or subject matter." (*Bravo Vending* v. *City of Rancho Mirage, supra,* 16 Cal.App.4th at p. 397.) As the Legislature demonstrated in enacting Penal Code section 12026, it can and does expressly prohibit local regulation of certain areas of weapons control. There is, however, no comparable state provision prohibiting local authorities from regulating the storage of firearms. There is no state provision that local governments must accept compliance with one of Penal Code section 12071's alternatives as sufficient. Section 8-609, therefore, also does not explicitly contradict state law.

The Legislature also can and does expressly declare an intent to fully occupy a field of law. Government Code section 53071, for example, expressly provides that the whole field of licensing and registration is occupied by state law. Government Code section 53071.5 similarly provides that the state fully occupies the whole field of regulation of the manufacture, sale, or possession of imitation firearms. There is no comparable Legislative declaration of intent fully to occupy the whole field of regulation of the sale of nonimitation firearms, nor is there an expression of intent fully to occupy the field of security of weapons stored by dealerships. Lafayette Municipal Code section 8-609, accordingly, does not enter into a field of regulation which the state expressly has reserved to itself.

■ The question, therefore, is whether a legislative intent fully to occupy the field of regulation of security in the storage of firearms should be implied. ■ In resolving this question we look to the following indicia of legislative intent: "(1) the subject matter has been so fully and completely covered by general law as to clearly indicate that it has become exclusively a matter of state concern; (2) the subject matter has been partially covered by general law couched in such terms as to indicate clearly that a paramount state concern will not tolerate further or additional local action; or (3) the subject matter has been partially covered by general law, and the subject is of such a nature that the adverse effect of a local ordinance on the transient citizens of the state outweighs the possible benefit to the" locality. (*In re*

*Hubbard, supra,* 62 Cal.2d at p. 128; accord, *Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at p. 898.)

██ Through Penal Code section 12071, subdivision (b)(14), the state Legislature has demonstrated its intent to permit sales not only out of secure facilities, but out of other facilities where specified measures have been taken either to secure the firearms themselves or to store them in a locked fireproof safe or vault. It has been held that where, as here, the state expressly permits operation under a certain set of standards, it implies that the specified standards are exclusive. Local authorities thus are preempted from imposing more stringent standards and making impermissible that which the higher authority expressly permits. (See *Water Quality Assn.* v. *County of Santa Barbara* (1996) 44 Cal.App.4th 732, 741-742 [52 Cal.Rptr.2d 184] [local law imposing requirements on water softeners conflicts with state law imposing less strict requirements on water softeners].) The present situation differs from that existing in *Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th 893, where it was found that a state provision requiring dealers to implement one measure designed to reduce graffiti did not impliedly bar local governments from requiring them to do anything else. (*Id.* at p. 905.) The court there found no intrinsic or extrinsic evidence supporting a different conclusion. (*Ibid.*) Here, other language in Penal Code section 12071 itself supports the conclusion that the Legislature intended its occupation of the field of firearm storage by dealers to be exclusive. Subdivision (b)(14) of section 12071 imposes storage requirements on firearm dealers operating in areas with specified population densities. Subdivision (b)(15) of section 12071 concerns areas of lesser densities, providing that local authorities in such areas "may impose the requirements specified in paragraph (14)." If, as Lafayette argues, local authorities retain the power to impose storage requirements on firearm dealers, the grant of such authority set forth in section 12071, subdivision (b)(15) is completely unnecessary. ██ Statutes should be construed to give effect to every word or provision. (*Pacific Legal Foundation* v. *Unemployment Ins. Appeals Bd.* (1981) 29 Cal.3d 101, 114 [172 Cal.Rptr. 194, 624 P.2d 244].)

We recognize and agree with Lafayette's argument that Penal Code section 12071 does not, in general, exclude local agencies from imposing additional restrictions on the licensing of firearms dealers, and if subdivision (b)(14) were less detailed in the safety standards it prescribes, we would find that it does not preempt the area of security for storage of firearms. Subdivision (b)(14) of section 12071, however, is very specific. We also agree that subdivision (d) of section 12071 contemplates the possibility that local regulations might conflict with section 12071, subdivision (b)(14), and provides that in certain specified situations state law will give way to local regulation. We do *not* agree that subdivision (d) of section 12071 stands for

the proposition that *any* local regulation of the storage of firearms is valid. Subdivision (d) simply grants local authorities the power to exempt an applicant from complying with subdivision (b)(14) "if the licensee is unable to comply with those requirements because of local ordinances, covenants, lease conditions, or similar circumstances not under the control of the licensee."[5] Lafayette's municipal code does not render licensees unable to comply with subdivision (b)(14), and therefore does not implicate subdivision (d).

It is true that Lafayette's local laws will have little impact on transient citizens and thus that the third indicium of Legislative intent does not argue in favor of preemption. ▉▉▉ The detailed requirements in Penal Code section 12071, subdivision (b)(14), and the specific grant of authority in subdivision (b)(15), however, are terms consistent with a finding that the state concern in the regulation of storage of firearms is such that no further or additional action in that particular area of regulation will be tolerated, except as specified by subdivision (d). As Lafayette Municipal Code section 8-609 does not fall within the limited exception set forth in Penal Code section 12071, subdivision (d), it is preempted. The superior court, accordingly, erred by sustaining the demurrer as to that issue.

## B. *Dealers' Duty to Provide Security Devices*

▉▉▉ Lafayette Municipal Code section 8-608 sets forth certain conditions for issuance of a police permit. At issue here is subdivision (9), providing: "The permittee shall not sell, lease or otherwise transfer a firearm without also selling or otherwise providing with each such firearm a trigger lock or similar device that is designed to prevent the unintentional discharge of the firearm . . . ." (Lafayette Mun. Code, § 8-608, subd. (9).) State law neither requires nor prohibits such devices and neither requires nor prohibits dealers from including them with the sale of every firearm. Subdivision (9) therefore does not expressly conflict with or duplicate any specific provision of state law, nor does it enter an area occupied by state law. (See *Sherwin-Williams Co.* v. *City of Los Angeles, supra,* 4 Cal.4th at p. 905 [state legislation that does not mention particular subject matter does not bar local legislation as to that subject matter].)

Appellants, however, contend that Lafayette Municipal Code section 8-608 *does* contradict state law, citing Penal Code section 12072, subdivision (c)(5). The cited law prohibits the transfer or sale of firearms to persons

---

[5]Penal Code section 12071, subdivision (d) appears to be concerned with the physical appearance of buildings, and recognizes that local ordinances, covenants and leases might make it impossible for a licensee to operate out of a "secure facility" as defined by section 12071, and thus might make it impossible for a licensee to comply with the first storage alternative set forth in subdivision (b)(14)(A). By section 12071, subdivision (d), the state Legislature gives local agencies the power to determine that a licensee is operating out of a secure facility notwithstanding that the facility does not meet the letter of subdivision (c)(3).

failing to present the dealer with a basic firearm safety certificate. It concerns the ability of a potential purchaser to use a firearm safely. It does not concern the area regulated by section 8-608: security of firearms.

Appellants assert that since trigger locks are not made for every type of weapon that lawfully may be sold under state law, Lafayette Municipal Code section 8-608 interferes with the right of citizens to purchase all types of firearms made salable by state law. This argument is based on the faulty premise that section 8-608 requires dealers to sell or provide trigger locks with every weapon sold. Section 8-608 requires only that every weapon be sold with a trigger lock *or similar device* designed to prevent the unintentional discharge of the firearm. As a lockable box or other carrying case preventing unintentional contact with the weapon's trigger would satisfy the requirements of section 8-608, it is possible to provide an acceptable device for every type of weapon made salable by state law.

Appellants also argue that the protective device requirement interferes with the right of private citizens to *sell* weapons. Appellants find this right in the Penal Code's provisions requiring all sales of firearms by private citizens to be conducted through either a licensed dealer or a law enforcement agency. (Pen. Code, § 12072, subd. (d); and see *id.*, §§ 12070, subd. (a) & 12082.) The Penal Code, however, establishes a *limitation*, not a right. In any event, any right to sell a product is not destroyed by an ordinance that limits the manner in which the product may be sold. (See *Bravo Vending* v. *City of Rancho Mirage, supra,* 16 Cal.App.4th at p. 413.) Nothing prevents private citizens from obtaining protective devices for any weapon they might wish to sell. That the sales will be facilitated by dealers only increases the ease with which a citizen will be able to obtain a protective device. It is not persuasive that some buyers might choose not to purchase a weapon over purchasing a weapon with a protective device. Buyers may prefer not to purchase all kinds of safety features on all kinds of products, but it does not follow that requiring safety features interferes with any right existing in the seller. Finally, it may be that some private citizens will avoid providing safety devices by selling their firearms directly to purchasers, in violation of state law. That possibility, however, does not justify a finding of state preemption of Lafayette Municipal Code section 8-608.

We find Lafayette Municipal Code section 8-608 is not preempted by state law.

## II.

### *Constitutionality of Lafayette's Provisions*

*Standard of Review*

Appellants' action presents a facial challenge to ordinance No. 433. We therefore are not concerned with whether ordinance No. 433 *might* be applied in a discriminatory manner, or whether it *might* be applied to exclude any and all firearm dealerships from Lafayette. Our concern is limited to whether the challenged provisions inevitably pose a present total and fatal conflict with the applicable constitutional prohibitions. (*Tobe* v. *City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 [40 Cal.Rptr.2d 402, 892 P.2d 1145].) In addition, because appellants complain that the ordinance was enacted for improper purposes, and that other legislation would have been preferable, we point out that courts ordinarily do not consider the motives behind legislation, including local legislation (*County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 726 [119 Cal.Rptr. 631, 532 P.2d 495]; *Oxnard Harbor Dist.* v. *Local Agency Formation Com.* (1993) 16 Cal.App.4th 259, 271 [19 Cal.Rptr.2d 819]), nor do they second-guess the wisdom of the legislation (*Ratkovich* v. *City of San Bruno* (1966) 245 Cal.App.2d 870, 879 [54 Cal.Rptr. 333]; *Thain* v. *City of Palo Alto* (1962) 207 Cal.App.2d 173, 187 [24 Cal.Rptr. 515]).

As noted earlier, a municipality has broad power to enact all local, police, sanitary and other ordinances and regulations not in conflict with general laws. (Cal. Const., art. XI, § 7.) As a general rule, such ordinances will be upheld against constitutional challenge if they are reasonably related to promoting the health, safety, comfort and welfare of the public, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose. (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72 [101 Cal.Rptr. 768, 496 P.2d 840].) It also is settled that due process rights are not violated because zoning and licensing ordinances, such as those at issue here, state somewhat imprecise guidelines for issuing a permit or license or vest a large degree of discretion in the issuing agency. " 'California courts permit vague standards because they are sensitive to the need of government in large urban areas to delegate broad discretionary power to administrative bodies if the community's zoning business is to be done without paralyzing the legislative process.' " (*People* v. *Gates* (1974) 41 Cal.App.3d 590, 595 [116 Cal.Rptr. 172]; and see *Novi* v. *City of Pacifica* (1985) 169 Cal.App.3d 678, 682 [215 Cal.Rptr. 439]; *Groch* v. *City of Berkeley* (1981) 118 Cal.App.3d 518, 522 [173 Cal.Rptr. 534].) "[I]n California, the most general zoning standards usually are deemed

sufficient. 'The standard is sufficient if the administrative body is required to make its decision in accord with the general health, safety, and welfare standard.' (Cal. Zoning Practice (Cont. Ed. Bar [1969]) p. 147.)" (41 Cal.App.3d at p. 595.)

Appellants, however, contend Lafayette's laws must be measured against a higher standard, arguing that a constitutionally protected interest—freedom of speech—is implicated by ordinance No. 433. It is true that ordinances impinging on First Amendment activities are subjected to strict scrutiny. (See *Sunset Amusement Co.* v. *Board of Police Commissioners, supra,* 7 Cal.3d at p. 72; *Hunter* v. *City of Whittier* (1989) 209 Cal.App.3d 588, 597 [257 Cal.Rptr. 559].) The laws at issue here, however do not regulate speech; they regulate the activity of selling firearms. Appellants appear to claim that because sales of weapons are commercial in nature, or because sales generally involve some verbal communication, sales of weapons are entitled to the protections accorded "commercial speech."[6] Appellants mis-construe the nature of commercial speech in the First Amendment context. Commercial *activity,* such as selling or buying a product, is not accorded First Amendment protection. *Speech* is accorded First Amendment protection. At one time, speech that was commercial in nature was deemed unprotected by the First Amendment. The Supreme Court in *Va. Pharmacy Bd.* v. *Va. Consumer Council* (1976) 425 U.S. 748 [96 S.Ct. 1817, 48 L.Ed.2d 346], however, established that even "commercial speech," i.e., speech that does no more than propose a commercial transaction, is pro-tected speech. (*Id.* at p. 762 [96 S.Ct. at pp. 1825-1826]; and see *People* v. *Fogelson* (1978) 21 Cal.3d 158, 165, fn. 7 [145 Cal.Rptr. 542, 577 P.2d 677].) Thus it is now settled that ". . . speech does not lose its protected character when it is engaged in for profit. [Citations.]" (*Spiritual Psychic Science Church* v. *City of Azusa* (1985) 39 Cal.3d 501, 509 [217 Cal.Rptr. 225, 703 P.2d 1119].) The laws at issue here do not restrict advertising or solicitations, and thus do not restrict commercial speech. It follows that the protections accorded commercial speech do not apply.

The opinion of the Ninth Circuit in the recent case of *Nordyke* v. *Santa Clara County* (9th Cir. 1997) 110 F.3d 707, highlights the flaws in appel-lants' argument. A lease between the Santa Clara County Fairgrounds Management Corporation and Santa Clara as the owner of the fairgrounds prohibited "any person from selling, offering for sale, supplying, delivering,

---

[6]The Constitution accords a lesser protection to commercial speech than to other constitu-tional guaranteed expression. (*Central Hudson Gas & Elec.* v. *Public Serv. Comm'n* (1980) 447 U.S. 557, 562-563 [100 S.Ct. 2343, 2349-2350, 65 L.Ed.2d 341]; *Rodriguez* v. *Solis* (1991) 1 Cal.App.4th 495, 511-512 [2 Cal.Rptr.2d 50].) As the activity at issue here is not commercial speech, it is not afforded even these lesser protections.

or giving possession or control of firearms or ammunition to any other person at a gun show at the fairgrounds. This prohibition applies to any act initiating any of the foregoing transactions with the intent of completing them at a later date." (*Id.* at pp. 708-709.) The circuit court, while agreeing that "the act of exchanging money for a gun is not 'speech' within the meaning of the First Amendment," found that the provision impinged on the First Amendment because it "covers more than the simple exchange of money for a gun. [It] purports to prohibit any person from 'offering for sale . . . firearms or ammunition to any other person at a gun show at the fairgrounds.'" (*Id.* at p. 710.) In other words, the provision was invalid not because it restricted sales activity—an activity which in and of itself involves no First Amendment rights—but because it restricted advertising or offering for sale, and thus restricted speech. Lafayette's laws do not prohibit advertising or offering for sale, nor do they otherwise restrict speech.[7]

Appellants also argue that the sale of firearms is specially sanctioned by statutory law. That sales of firearms are permitted by statutory law gives that activity no special sanction, above and beyond the sale of any product not prohibited by law.

■ In short, ordinances regulating the sale of weapons need be scrutinized under no higher standard than that applied to ordinances regulating the sale of any other product. The ordinances at issue here therefore will be upheld if they are reasonably related to promoting the public health, safety, comfort and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to that purpose. Moreover, a reviewing court presumes that the ordinance in question is valid. Finally appellants, in arguing that Lafayette's laws are invalid, have the burden of "surmounting all possible intendments, presumptions, and reasonable doubts indulged in favor of [their] validity." (*Sonoma County Organization etc. Employees* v. *County of Sonoma* (1991) 1 Cal.App.4th 267, 275 [1 Cal.Rptr.2d 850].)

---

[7]In a related argument, appellants point out that the purchase of weapons may be deemed "adult activity," citing law holding that the First Amendment protects "adult activity." In this context, "adult activity," does not mean activity that is limited to adults. It means a form of expression that may be characterized as "adult entertainment." Nude dancing, for example, is entitled to First Amendment protection not because it is an activity in which adults engage, but because it is a form of expression; i.e., it is "communicative entertainment." (*Morris* v. *Municipal Court* (1982) 32 Cal.3d 553, 560 [186 Cal.Rptr. 494, 652 P.2d 51].) "[T]he performance of such a dance, *like other forms of expression or communication*, prima facie enjoys protection under the First Amendment of the Constitution of the United States . . . ." (*In re Giannini* (1968) 69 Cal.2d 563, 567 [72 Cal.Rptr. 655, 446 P.2d 535], italics added.) The sale of any product, including weapons, is not a form of expression or communication.

*Lafayette's Land-use Regulations.*

Lafayette Municipal Code section 6-533 is in essence a zoning law, limiting firearm dealerships to areas zoned for retail or general commercial uses. Section 6-533 also requires dealerships to obtain land use permits, and directs the planning commission to consider the following criteria in determining whether to grant a permit:

"1. [L]ocational compatibility of the proposed use with other existing uses in close proximity, in particular elementary, middle or high school, pre-school or day-care center, other firearms sales business, liquor stores and bars, and residentially zoned area;

"2. [A]rchitectural compatibility of the proposed use with other existing uses in the vicinity, due to the requirements of Chapter 8-6, Article 2 regarding a 'secure facility.'"

There is no question but that municipalities are entitled to confine commercial activities to certain districts (*Euclid* v. *Ambler Co.* (1926) 272 U.S. 365, 395 [47 S.Ct. 114, 121, 71 L.Ed. 303, 54 A.L.R. 1016]; *Ewing* v. *City of Carmel-by-the-Sea* (1991) 234 Cal.App.3d 1579, 1586-1589 [286 Cal.Rptr. 382]; and see *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 490-493 [234 P. 381, 38 A.L.R. 1479]), and that they may further limit activities within those districts by requiring use permits (*O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 158 [96 Cal.Rptr. 484]). "It is well settled that a municipality may divide land into districts and prescribe regulations governing the uses permitted therein, and that zoning ordinances, when reasonable in object and not arbitrary in operation, constitute a justifiable exercise of police power. [Citations.] In enacting zoning ordinances, the municipality performs a legislative function, and every intendment is in favor of the validity of such ordinances. [Citation.] It is presumed that the enactment as a whole is justified under the police power and adapted to promote the public health, safety, morals, and general welfare. [Citation.]" (*Lockard* v. *City of Los Angeles* (1949) 33 Cal.2d 453, 460 [202 P.2d 38, 7 A.L.R.2d 990]; accord, *City of Los Angeles* v. *Silver* (1979) 98 Cal.App.3d 745, 749-750 [159 Cal.Rptr. 762].) The issue, once again, is whether there is a rational basis for the zoning decision. (*Builders Assn. of Santa Clara-Santa Cruz Counties* v. *Superior Court* (1974) 13 Cal.3d 225, 233, fn. 8 [118 Cal.Rptr. 158, 529 P.2d 582]; *Friedman* v. *City of Fairfax* (1978) 81 Cal.App.3d 667, 677 [146 Cal.Rptr. 687].)

As the operation of a firearm dealership is a commercial enterprise, there is a rational basis for confining that operation to commercially

zoned areas. In addition, because dealerships can be the targets of persons who are or should be excluded from possessing weapons, it is reasonable to insist that dealerships be located away from residential areas, schools, liquor stores and bars. Municipalities also have a legitimate interest in the architectural integrity of their cities, and are entitled to enact laws to enhance the aesthetic values of the community (*Tahoe Regional Planning Agency* v. *King* (1991) 233 Cal.App.3d 1365, 1395 [285 Cal.Rptr. 335].) It therefore is reasonable to demand review of any security measures taken by dealerships to ensure that they are architecturally compatible with surrounding structures. Lafayette Municipal Code section 6-533 is rationally related to these legitimate public purposes.

Appellants complain that Lafayette Municipal Code section 6-533 does not sufficiently define the guidelines for accepting or rejecting an application for a use permit. The standards at issue here, while unquestionably nebulous, are no more so than the " 'general health, safety and welfare standard,' " (*People* v. *Gates, supra,* 41 Cal.App.3d at p. 595) or equally undefined standards that consistently pass constitutional muster.[8] Applicants' due process rights are further protected by the right to a hearing granted applicants and the right to review of the planning commission's decision. (Lafayette Mun. Code, §§ 6-211, 6-212, 6-215, 6-233.)

Lafayette Municipal Code section 6-533 is facially valid.

*Barring Minors From Stores Where Firearms Are Sold*

 Lafayette Municipal Code section 8-608 provides that issuance of a police permit is subject to specified conditions, including "(3) The applicant shall not permit any person under 18 years of age to enter or remain within the premises without being accompanied by the parent or other adult

---

[8]In *Tustin Heights Assn.* v. *Bd. of Supervisors* (1959) 170 Cal.App.2d 619 [339 P.2d 914], an ordinance was upheld that permitted conditional use permits and variances only when they "will preserve the integrity and character of the district, the utility and value of adjacent property and the general welfare of the neighborhood." (*Id.* at pp. 634-635.) In *Matthews* v. *Board of Supervisors* (1962) 203 Cal.App.2d 800 [21 Cal.Rptr. 914], an ordinance was upheld that authorized use permits only upon a finding that " 'the establishment, maintenance or operation of the use or building applied for will not, under the circumstances of the particular case, be detrimental to the health, safety, peace, morals, comfort and general welfare of persons residing or working in the neighborhood . . . or be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the County.' " (*Id.* at p. 803.) In *Novi* v. *City of Pacifica, supra,* 169 Cal.App.3d 678, Division Five of this court upheld an ordinance that adopted the "general welfare" standard, and precluded a site development permit if " 'there is insufficient variety in the design of the structure and grounds to avoid monotony in the external appearance.' " (*Id.* at p. 681.) In *Briggs* v. *City of Rolling Hills Estates* (1995) 40 Cal.App.4th 637, 643 [47 Cal.Rptr.2d 29] a "neighborhood compatibility" ordinance was upheld that required a proposed design to " 'respect the existing privacy of surrounding properties.' "

legally responsible for the minor child where the firearms sales activity is the primary business performed at the site." Penal Code section 12072, subdivision (a)(3)(A), prohibits the sale of firearms to minors. Minors accordingly have no legitimate reason for entering or remaining in a firearms dealership. It follows that it is reasonable to prohibit unaccompanied minors from entering or remaining within such premises. Appellants contend that Lafayette Municipal Code section 8-608 is a denial of equal protection because minors may still enter and remain within premises where firearms are sold, but the sale of firearms is not the primary business performed at the site. **(16)** "Equal protection is not denied simply because an ordinance treats one class of persons differently from another. Where there is no suspect classification, and purely economic interests are involved, a municipality may impose any distinction which bears some 'rational relationship' to a legitimate public purpose. (*Hale* v. *Morgan* (1978) 22 Cal.3d 388, 395 [584 P.2d 512, 149 Cal.Rptr. 375].) Courts consistently defer to legislative determinations as to the desirability of such distinctions. (*New Orleans* v. *Dukes* (197[6]) 427 U.S. 297, 303 [49 L.Ed.2d. 511, 516-517, 96 S.Ct. 2513].) The ordinance will be upheld so long as the issue is ' "at least debatable." ' (*Minnesota* v. *Clover Leaf Creamery Co.* (1981) 449 U.S. 456, 464 [66 L.Ed.2d 659, 669, 101 S.Ct. 715].)" (*Cotati Alliance for Better Housing* v. *City of Cotati* (1983) 148 Cal.App.3d 280, 291-292 [195 Cal.Rptr. 825].) **(15b)** Because minors have a legitimate reason for entering sports or department stores that sell merchandise other than weapons or weapons-related goods, a rational basis exists for distinguishing between such businesses and those that primarily sell weapons.

We also reject appellants' contention that the word "primary" is vague. ▇▇▇ Such terms, although nonmathematical, are not impermissibly vague if their meaning can be objectively ascertained by reference to common experiences of mankind. (*Rutherford* v. *State of California* (1987) 188 Cal.App.3d 1267, 1279 [233 Cal.Rptr. 781].) "Primary," is such a word, meaning "main" or "most." (See also *Fletcher* v. *Porter* (1962) 203 Cal.App.2d 313, 325 [21 Cal.Rptr. 452] [rejecting the argument that an ordinance was unconstitutionally vague for using and failing to define words such as "Capital Improvement Program," "industrial and manufacturing," and "embraced"].)

Finally, we do not consider the argument that Lafayette Municipal Code section 8-608 violates the right to privacy because it might be used to prohibit dealers operating out of their residences from inviting children into their homes. Even were we to consider the potential application of the ordinance, rather than its facial validity, the doctrine of exhaustion of administrative remedies would preclude us from considering the argument.

Appellants concede that because Lafayette's ordinance prohibits operation of a dealership out of a residence, the only dealers who might be prevented from inviting children into their homes are those whose businesses are grandfathered in under section 4 of the ordinance. The two persons so affected have not applied for a police permit. It is not at all clear their ability to operate would be conditioned on preventing any minor from entering their homes. Indeed, it is doubtful that the sales of weapons would be deemed the primary business performed in these dealers' homes. It is not at all clear that if such a condition were imposed on the issuance of a permit to them, it would be upheld upon the administrative review to which they are entitled by section 8-614. Appellants, therefore, have not exhausted their administrative remedies on this point, and it may not be considered by us. (*Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82, 88 [143 Cal.Rptr. 441].)

Lafayette Municipal Code section 8-608(3) is facially valid.

*Liability Insurance*

 Lafayette Municipal Code section 8-610 provides that no police permit may be issued or reissued unless the applicant has in effect an insurance policy meeting certain criteria.[9] There is no question but that weapons can cause death, serious injury or property damage. Indeed, one legitimate reason for possessing a weapon is for self-defense, a purpose that necessarily involves using a weapon to threaten death or injury to a would-be attacker. It is an unfortunate truth that weapons are not uncommonly wrongfully used to threaten, injure or kill. Indeed, it is the threat of such an attack that causes many persons to purchase weapons. There is a legitimate public interest in ensuring that those whose persons or property have been injured by weapons obtain adequate compensation. It is not irrational to assume firearm dealerships might be held liable for those injuries. Persons precluded by law from possessing weapons, but desiring to use them for illicit purposes, may be expected to obtain them from known

---

[9]Lafayette Municipal Code section 8-610 provides: "(a) No police permit shall be issued or reissued unless there is in effect a policy of insurance in a form approved by the city and executed by an insurance company approved by the city, whereby the applicant is insured against liability for damage to property and for injury to or death of any person as a result of the sale, lease or transfer or offering for sale, lease or transfer of a firearm. The minimum liability limits shall not be less than one million dollars ($1,000,000) for each incident of damage to property or incident of injury or death to a person.

"(b) The policy of insurance shall contain an endorsement providing that the policy shall not be cancelled until notice in writing has been given to the city manager at least 30 days prior to the time the cancellation becomes effective.

"(c) Upon expiration of a policy of insurance and if no additional insurance is obtained, the permit is considered cancelled without further notice."

sources; i.e., firearm dealers. The negligence of a dealership in securing the weapons or in selling a weapon to such unauthorized persons could be a cause of injury to innocent citizens. It also is likely that the individual using the weapon would not carry the kind of insurance that could compensate the persons they injure. As a result, one of the only viable sources of compensation would be the negligent dealership. It follows that Lafayette has a legitimate interest in requiring firearm dealers to maintain adequate insurance.

Appellants contend that the insurance requirement is a denial of equal protection because it discriminates between firearm dealers and other businesses selling products that can and do cause injury, and because it fails to discriminate between firearm dealers on the basis of size and probable volume of sales. The issue, again, is whether the distinction drawn by the law bears a rational relationship to a legitimate state interest. (*Elysium Institute, Inc.* v. *County of Los Angeles* (1991) 232 Cal.App.3d 408, 429 [283 Cal.Rptr. 688]; *Cotati Alliance for Better Housing* v. *City of Cotati, supra,* 148 Cal.App.3d at pp. 291-292.) There are several rational reasons for distinguishing firearm dealerships from sellers of other products. People obtain firearms for self-defense. They do not obtain other products, such as automobiles, for such purposes. Persons wishing to steal automobiles are likely to target automobiles appearing on the street, rather than those kept at dealerships. Although persons desiring to steal firearms might attempt to obtain them from private citizens, there usually is no way to learn if a particular person owns a firearm, or owns the desired firearm. It therefore is not irrational to assume that persons desiring to steal firearms would target dealerships. Dealers in most products are not prohibited by law from selling their product to certain classes of persons. Firearm dealers may not sell to specified classes of persons, and, indeed, are prohibited from selling a firearm to an authorized person knowing that it later will be transferred to an unauthorized person. (Pen. Code, § 12072.) Persons purchasing automobiles are required to carry insurance. Persons purchasing firearms are not. It follows that the potential for a firearm dealer to be held liable for an injury caused by a firearm is far greater than the potential for an automobile dealer, or dealer in other products to be held liable for an injury caused by such product. In addition, it is less likely that the person using a firearm will be insured than that a person using an automobile will be insured. A basis therefore exists for distinguishing between those who sell firearms and those who sell other products, and this distinction bears a rational relationship to the legitimate interest of ensuring that persons suffering personal or property injuries receive adequate compensation. Finally, the cost of insurance is a matter between each dealership and its insurer, and undoubtedly will be based in part on the size of the dealership and in part on the likelihood of

negligence and resulting injury from the operation of the dealership. There is no reason for Lafayette's insurance provision to distinguish between size and type of dealership.

Lafayette Municipal Code section 8-610 is facially valid.

For all of the above reasons we conclude that the trial court correctly sustained the demurrer as to all appellants' allegations except for their attack on Lafayette Municipal Code section 8-609.

## III.

### *Attorney Fees*

■ Under Code of Civil Procedure section 1021.5,[10] attorney fees may be awarded to a successful party if certain conditions are met, including that a significant benefit has been conferred on the general public or a large class of persons. Appellants did not prevail at trial. Nonetheless, it is true that "success" does not necessarily require that the litigant actually receive a favorable result at trial. It is enough that the lawsuit acted as a catalyst speeding the defendant to act in the sense that the plaintiff's lawsuit was a material factor, or contributed in a significant way, to the result achieved. (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 352-353 [188 Cal.Rptr. 873, 657 P.2d 365]; *Belth* v. *Garamendi* (1991) 232 Cal.App.3d 896, 901 [283 Cal.Rptr. 829].) ■ Appellants contend here, as they did in the trial court, that their lawsuit was the catalyst for an amendment to ordinance No. 433 that mooted portions of their brief by adopting the positions asserted by them. In particular, appellants claim credit for an amendment in the definition of "firearm," the deletion of a provision prohibiting the sale of expanding ammunition, and the deletion of a provision banning the sale of any firearm or magazine for a firearm with the capacity to take more than 15 rounds of ammunition.

---

[10]Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor, unless one or more successful parties and one or more opposing parties are public entities, in which case no claim shall be required to be filed therefor under Part 3 (commencing with Section 900) of Division 3.6 of Title 1 of the Government Code. [¶] Attorneys' fees awarded to a public entity pursuant to this section shall not be increased or decreased by a multiplier based upon extrinsic circumstances, as discussed in Serrano v. Priest, 20 Cal.3d 25, 49 [141 Cal.Rptr. 315, 569 P.2d 1303]."

Appellants' claim is based on inference: Because the amendment followed the initiation of their lawsuit, the lawsuit must have been a material factor in bringing about the amendment. Lafayette, however, introduced evidence that its decision to amend the ordinance was independent of, and predated, appellants' lawsuit. Ordinance No. 433 was adopted by Lafayette's city council on November 14, 1994. There had been many hearings prior to its adoption at which members of the public testified, and many issues were raised. Shortly after the ordinance was adopted, Lafayette realized that the ordinance's definition of "firearms" was overbroad. Rather than setting forth its own definition, the ordinance cross-referenced the definition contained in another provision of the municipal code regulating the unlawful discharge of firearms. That definition included such items as slingshots, bows and arrows, BB guns and air rifles, all of which were items the city council never intended to be regulated by ordinance No. 433. Lafayette accordingly decided that the ordinance would have to be amended. The amended definition of firearm did not include a reference to ammunition. The city attorney therefore also recommended that all references to ammunition be deleted from the definition of "firearm sales activity." Counsel for appellants called the city attorney's office on December 4, 1994, after the decision to amend had been made, but before the amendment went into effect. Counsel informed an assistant city attorney that appellants would be filing the instant action, and faxed her a copy of their draft complaint. The assistant city attorney explained on the telephone that her office was recommending that the ordinance be amended. She wrote a confirming letter to appellants on December 8, 1994, in which she summarized the amendments her office was proposing. They included amending the definition of "firearms," deleting the prohibition on the sale of expanding ammunition, and deleting the prohibition on the sale of large capacity ammunition devices; i.e., the sale of any firearm or magazine for a firearm with the capacity to take more than 15 rounds of ammunition. Appellants filed their petition and complaint 13 days later.

On this evidence, the trial court concluded that neither the lawsuit nor the threat of the lawsuit acted as a catalyst in Lafayette's decision to amend the ordinance. On appeal, appellants abandon the claims that their suit brought about the amendment to the definition of firearms or the deletion of the prohibition on expanding ammunition. They maintain, however, that Lafayette never refuted their claim that they caused the deletion of the prohibition on large capacity ammunition devices, and that the court accordingly erred in refusing to grant them attorney fees for that deletion. Appellants' claim was not evidence requiring refutation. It was their burden to show a causal connection between their action and the amendment. Appellants' evidence, as noted, was an inference. That inference was soundly refuted by the

evidence that Lafayette had decided to amend ordinance No. 433 before appellant's suit was filed and that the contemplated amendments included the deletion of the prohibition on large capacity devices. The trial court's conclusion, therefore, is supported by the evidence and will not be disturbed here. In so finding, we need not and do not decide if ensuring consumer access to large capacity ammunition devices confers a significant benefit on the public.

In light of our conclusion that Lafayette Municipal Code section 8-609 is preempted by state law, appellants, however, have been successful as to one of their several contentions. By their lawsuit, they have limited the security measures that may be required of Lafayette firearm dealerships to just one of the methods specified in Penal Code section 12071, subdivision (b)(14). If by this limitation appellants have conferred a significant benefit on the general public or a large class of persons, they are entitled to an award of fees for the efforts of their attorneys in obtaining this ruling. The questions of whether the benefit resulting from these efforts is significant, or whether the class of persons it benefits is large enough to justify an award of fees, involve factual issues and thus must be decided by the trial court.

The judgment is reversed insofar as it holds that Lafayette Municipal Code section 8-609 is not preempted by state law. In all other respects the judgment is affirmed. The matter is remanded to the trial court to determine whether appellants are entitled to attorney fees, and, if so, to award them reasonable fees for successfully challenging section 8-609. Each party will bear its own costs on appeal.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied October 16, 1997, and appellants' petition for review by the Supreme Court was denied December 10, 1997.